**John GOODLOE et al., Appellants,**

v.

**Charles BAESLER, Jr., et al., Appellees.**

Supreme Court of Kentucky.

July 2, 1976.

William C. Jacobs, Lexington, for appellants.

David T. Enlow, Lexington, for appellee Charles Baesler, Jr.

Leslie W. Morris, II, Stoll, Keenon & Park, Lexington, for appellees Rev. Bob W. Brown, et al.

STEPHENSON, Justice.

The trial court granted summary judgment dismissing appellants' complaint on the ground that a proposed amendment to the Lexington-Fayette Urban County Government Charter violated section 156 of the Kentucky Constitution. We affirm.

The appellants filed a petition with the Fayette County Clerk proposing an amendment to the charter of the Lexington-Fayette Urban County Government to be placed on the ballot at the next general election. The clerk refused to cause the proposed amendment to be placed on the ballot on the ground that the number of signatures of qualified voters on the petition did not comply with the amendment requirement of the charter. The appellants filed suit against the clerk in the Fayette Circuit Court alleging that the petition rejected by the clerk contained a sufficient number of signatures of qualified voters and seeking a mandatory injunction directing the clerk to cause the proposed amendment to be placed on the ballot. The appellees, other than the clerk, as citizens and taxpayers were permitted to intervene as defendants, asserting as a defense that the proposed amendment was illegal. The intervening defendants, appellees here, filed a motion for summary judgment. The motion was sustained by the trial court, and judgment was entered dismissing appellants' complaint on the ground that the proposed amendment violated section 156 of the Kentucky Constitution.

Appellants assert (1) the proposed amendment is valid, and (2) the trial court erred in deciding the validity of the proposed amendment prior to submission to the voters.

The proposed amendment sought to amend section 15.13 of the charter.

Section 15.13 reads as follows:

"The Lexington-Fayette Urban County Government shall replace and supersede the governments of the City of Lexington and Fayette County on the effective date of this Charter. Thereupon, the governments of Fayette County and the City of Lexington shall terminate as separate political and government entities and be merged into the government created by this Charter in accordance with the terms and conditions specified therein."

The proposed amendment provides:

"The governments of Fayette County and the City of Lexington, with the powers, privileges and territorial limits as each possessed on December 31, 1973 shall replace and supersede the Lexington-Fayette Urban County Government on January 1 of the year next following ratification hereof by a majority of votes cast at the regular election in favor hereof. Thereupon, The Lexington-Fayette Urban County Government shall terminate as a separate political and governmental entity."

Appellants tell us "the real issue is nothing more, or less, than whether the voters of Fayette County are going to be allowed to decide what the form of their government is to be." The simple answer to this proposition is, the voters of Fayette County decided that they desired the form of government authorized by the General Assembly (KRS 67A.010–67A.040), the Lexington-Fayette Urban County Government. We validated this legislation in *Pinchback v. Stephens,* Ky., 484 S.W.2d 327 (1972). We do not believe appellants would seriously assert their right to adopt this form of government in the absence of the enabling legislation by the General Assembly. Obscured by the lofty ideals posed in appellants' proposition is the hard legal fact that the Lexington-Fayette Urban County Government is a creature of the General Assembly, as was city of Lexington before it, possesses only those powers granted by the General Assembly, and is subject to the power of the General Assembly to enlarge or diminish its powers or to be abolished at any time by act of the General Assembly. So we can say the electorate in this respect may decide the form of their government only within the framework of an act of the General Assembly. This leads us to the contention of appellants that their action "seeks only to give the voters of Fayette County an opportunity to decide if they want to keep what they have or return to what they had."

In *Holsclaw v. Stephens,* Ky., 507 S.W.2d 462 (1974), we considered the validity of the charter of the Lexington-Fayette Urban County Government. A section of the charter providing that no amendment which has the effect of abolishing the charter shall become effective until such time as the General Assembly has established a successor government to replace and supersede the government established by the charter was declared invalid. The opinion went on to say at page 480:

"In the absence of legislation prescribing a method of abolition we do not undertake at this time to say what form of local government would prevail in the event the Charter should be abolished."

KRS 67A.010 et seq. contain no procedure for abolishing the Lexington-Fayette Urban County Government, and we do not decide in this opinion whether the voters could abolish it absent authorizing legislation.

As to the status of the city of Lexington, *Holsclaw* states at page 476, "[w]e hold that the voters of Fayette County abolished the City of Lexington and its government when they adopted urban county government." This clear language should answer appellants' argument that the city of Lexington is lying dormant somewhere awaiting resurrection by the voters. Section 156 of the Kentucky Constitution provides that the General Assembly alone may provide how towns may be organized.

The proposed amendment appellants seek to place on the ballot is not constitutionally permissible. The trial court in deciding the validity of this amendment promptly and not permitting the charade of a vote on an invalid amendment found his authority in *Utz v. City of Newport,* Ky., 252 S.W.2d 434, at page 437 (1952):

"There is no right to obtain a vote of the people upon the enactment of legislation that would be invalid if approved by them. The court ought not to compel the doing of a vain thing and the useless spending of public money."

This is a sound principle of law and we adhere to it.

The judgment is affirmed.

CLAYTON, JONES, LUKOWSKY, PALMORE, STEPHENSON and STERNBERG, JJ., concur.

REED, C. J., concurs in result only.