**Dan CANDLER, et al., Appellant,**

v.

**Don BLEVINS, and Lexington–Fayette Urban County Government, Appellees.**

No. 95–SC–731–DG.

Supreme Court of Kentucky.

May 23, 1996.

Dale S. Ditto, Lexington, Timothy N. Philpot, John C. Roach, Lexington, for Appellants.

Julius Rather, Lexington, Mary Ann Delaney, Lexington–Fayette Urban County Government, Department of Law, Lexington, William H. McCann, H. Foster Pettitt, Penny R. Warren, Wyatt, Tarrant & Combs, Lexington, for Appellees.

STEPHENS, Chief Justice.

Appellant, Candler, appeals individually and as a representative of an organization named Citizens for a Better Lexington [hereinafter Citizens]. Citizens sought to amend the Lexington–Fayette Urban County Charter [hereinafter Charter] in order to place a cap on the legislatively adopted occupational tax. The Fayette County Clerk, Don Blevins, filed a declaratory judgment action in Fayette Circuit Court asking whether the proposed amendment should be placed on the ballot as requested by Citizens. The trial court granted the Lexington–Fayette Urban County Government's motion for summary judgment, holding that Kentucky law does not permit this type of Charter amendment. The Court of Appeals agreed with the trial court and we affirm that decision.

Citizens presented a petition, pursuant to Article 14 of the Charter, requesting that the following proposed amendment be place on the ballot in the next regular election. The proposed amendment read:

> Any Urban County Government occupational license tax or fee on gross salary, wages, or net profits shall not exceed the maximum rate of 2% (two percent). This amendment shall be effective July 1, 1995.

Appellant alleges the amendment is proper because the Charter provides for amendment in Article 14 and amendment of the Charter is permitted by KRS Chapter 67A.

Article 14, section 14.01, of the Charter states:

> Except as otherwise provided, the voters of the Urban County may amend this Charter in accordance with the provisions of this Article.

The balance of Article 14 sets out the steps required to have the proposed amendment placed on the ballot. An amendment may be placed on the ballot either by passage of three-fifths of the members of the Lexington–Fayette Urban County Council [hereinafter Council] or by petition signed by 10% (ten percent) of the qualified voters who voted in the last preceding regular mayoral election. Article 14, sec. 14.02. Citizens proceeded by collecting signatures on a petition and presenting that petition to the Fayette County Clerk.

The trial court granted summary judgment based upon this Court's reasoning in *Holsclaw v. Stephens,* Ky., 507 S.W.2d 462 (1974). In *Holsclaw,* this Court analyzed the constitutionality of the enabling legislation, KRS Chapter 67A, and the Charter itself. The enabling legislation and most of the Charter were held to be constitutionally sound. The linchpin of *Holsclaw,* is the characterization of the Charter as the plan "which establish[ed] the governmental structure of urban county government." *Id.* at 471. The constitutional validity of the enabling legislation is based upon this characterization. This Court held that the General Assembly acted within constitutional boundaries in delegating "the authority to provide the structure" as it is "nothing more than the machinery by which" the powers and responsibilities of government are executed. *Id.*

The concurring opinion in *Holsclaw,* authored by former Justice Reed, clearly expresses the concept of the Charter as a

structural document. In his criticism of the choice of "Charter" as the descriptive term for the document, Justice Reed points out that:

> The enabling statute authorized the formulation and submission of a 'comprehensive plan.' This choice of language by the legislature evidences to me that only structure and not ultimate governmental power was envisioned.

*Id.* at 483. Justice Reed's concurrence clearly describes the relationship between the legislature, the Charter and the constitution. Moreover, Justice Reed explains:

> It is envisioned in the enabling statute that the people affected who have the right to adopt this structure also have the right to amend it, including the right to abolish it.

*Id.* This Court agrees wholeheartedly with the reasoning and conclusions reached by Justice Reed and thereby adopts the concurring opinion in *Holsclaw.*

■ Using this framework to analyze the instant case, we are firmly convinced that the Charter may only be amended as to structural matters. There is simply no authority to do more. The issue then becomes whether the Citizens' proposed amendment is structural in nature. The proposed amendment attempts to limit the *power* of the Urban County Government, and is therefore, invalid.

The Charter has been properly amended three times since its approval in 1972. Those amendments related to 1) the election and terms of the Council members; 2) the selection of a vice mayor; and, 3) the election, term and requirements for the office of mayor. *See,* Charter, sections 404; 4.07 and 5.02. These amendments were valid because they pertained to the *structure* of the Urban County Government.

■ It should be well understood by this time that the Urban County Government "possesses only those powers granted by the General Assembly, and is subject to the power of the General Assembly to enlarge or diminish its powers or to be abolished at any time by act of the General Assembly." *Goodloe v. Baesler,* Ky., 539 S.W.2d 298, 300 (1976). Apparently, we need to emphasize that it is *only* the General Assembly that may "enlarge or diminish" the power of the Urban County Government.

Appellant maintains that if the Council can change the tax rate then the people, as part of the government, can also change the rate through the amendment process. Appellant misconceives the people's remedy in this situation. In Kentucky, there is no authority for the "California type" initiative or referendum as proposed by appellant. The General Assembly removed any such authority with the repeal of KRS 89.600 and 89.610 in 1980. The people of the Commonwealth have the right and duty to involve themselves in the operation of that government by voting. If the people of Lexington–Fayette Urban County area wish to change the occupational tax rate, they have the opportunity to elect council members who will do so.

For the foregoing reasons, the Court of Appeals is affirmed.

All concur.