The ST. LUKE HOSPITALS, INC., Appellant

v.

COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES, OFFICE OF CERTIFICATE OF NEED; James W. Holsinger, M.D., Secretary for Health and Family Services, in his official capacity; St. Elizabeth Medical Center, Inc.; T.J. Samson Community Hospital; and Ephraim McDowell Regional Medical Center, Inc., Appellees.

No. 2007–CA–001092–MR.

Court of Appeals of Kentucky.

May 9, 2008.

Lisa English Hinkle, Christopher J. Shaughnessy, McBrayer, McGinnis, Leslie & Kirkland, PLLC, Lexington, KY, for appellant.

Michael D. Baker, Lori J. Eisele, Wyatt, Tarrant & Combs, LLP, Lexington, KY, Mark D. Guilfoyle, Mathew R. Klein, Renee' L. Alsip, Deters, Benzinger & Lavelle, P.S.C., Crestview Hills, KY, for appellees St. Elizabeth Medical Center, T.J. Samson Community Hospital, Ephraim McDowell Regional Medical Center.

Ann Truitt Hunsaker, Cabinet for Health and Family Services, Frankfort, KY, for appellees Cabinet for Health and Family Services and James W. Holsinger, M.D.

Before: COMBS, Chief Judge; DIXON, Judge; KNOPF,[1] Senior Judge.

## OPINION

DIXON, Judge.

The St. Luke Hospitals, Inc. ("St. Luke") appeal from a Franklin Circuit Court order of summary judgment dismissing St. Luke's declaratory judgment action. We affirm.

On June 4, 2004, the Cabinet for Health and Family Services ("Cabinet") issued the 2004–2006 State Health Plan pursuant to Kentucky Revised Statutes (KRS) 194A.010. The State Health Plan established criteria for a pilot project to study the risks and benefits of allowing angioplasty at hospitals without immediate access to an open-heart surgery facility.

The scope of the project was limited to one hospital in eastern Kentucky and one hospital in western Kentucky and required the hospitals to be located thirty minutes from an on-site open-heart surgery center.

St. Luke, which operates two hospitals in northern Kentucky, did not participate in the administrative hearings or application process for the pilot project. Instead, after the pilot hospitals were selected, St. Luke filed a declaratory judgment action in Franklin Circuit Court against the Cabinet. St. Luke claimed that the two-hospital limitation and the thirty-minute requirement were unconstitutional.

The circuit court allowed three other hospitals to intervene as defendants. T.J. Samson Community Hospital and Ephraim McDowell Regional Medical Center are the two hospitals selected to participate in the project. St. Elizabeth Medical Center is the only northern Kentucky hospital with an open-heart surgery program.

Following discovery and oral argument, the circuit court granted summary judgment in favor of the Cabinet and intervening defendants (hereinafter, collectively, "Cabinet"). This appeal followed.

As a preliminary matter, the Cabinet contends review is foreclosed because St. Luke failed to exhaust its administrative remedies and, alternatively, lacks standing to seek judicial review. We disagree.

## I. Exhaustion of Administrative Remedies

■ It is undisputed that St. Luke did not tender an application and the $2500.00 filing fee to the Cabinet for consideration. Thus, the Cabinet contends St. Luke did not pursue and exhaust its administrative remedies prior to seeking judicial review.

1. Senior Judge William L. Knopf, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

■ Exhaustion of remedies is a well-settled principle of administrative law. KRS 13B.140(2); *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 471 (Ky.2004). However, an exception to the exhaustion doctrine exists.

Exhaustion of administrative remedies is not necessary when attacking the constitutionality of a statute or a regulation as void on its face. This is because an administrative agency cannot decide constitutional issues. Thus, to raise the facial constitutional validity of a statute or regulation at the administrative level would be an exercise in futility.

*Commonwealth v. DLX, Inc.*, 42 S.W.3d 624, 626 (Ky.2001) (internal citations omitted).

Despite the Cabinet's argument to the contrary, it is apparent that St. Luke challenges the facial constitutionality of the regulation. Consequently, it would have been futile for St. Luke to participate in the administrative process.

## II. Standing

■ Next, the Cabinet contends that St. Luke lacks standing to seek judicial review. Again, we disagree.

■ To establish standing, St. Luke must "allege 'a personal stake in the outcome of the controversy' to warrant ... jurisdiction. Additionally, there must have been shown a causal relationship between [St. Luke]'s alleged injury and the activity about which it complains." *Associated Industries of Kentucky v. Commonwealth*, 912 S.W.2d 947, 951 (Ky.1995) *quoting Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

The Cabinet argues that St. Luke suffered no injury because it did not participate in the administrative process. The Cabinet primarily relies on *Steel v. Meek*, 312 Ky. 87, 89, 226 S.W.2d 542, 543 (Ky.

1950) for the proposition that the movant must be "adversely affected by the alleged discriminatory features of the law[.]"

We agree that *Steel* is on point. However, we are persuaded that St. Luke was adversely affected by the regulation. It is evident that the thirty-minute requirement precluded St. Luke from participating in the project.

The Supreme Court of the United States has noted:

When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656, 666, 113 S.Ct. 2297, 2303, 124 L.Ed.2d 586 (1993).

Under the facts in the case at bar, the selection criteria required eligible hospitals to be at least thirty minutes from an open-heart surgery center. Due to St. Luke's proximity to St. Elizabeth, it was ineligible to apply for the project. Consequently, St. Luke has standing to challenge the selection criteria because it was precluded from participating in the application process.

## III. Special and Local Legislation

St. Luke first contends the selection criteria constitute special or local legislation in violation of § 59 and § 60 of the Kentucky Constitution.

"The primary purpose of Kentucky Constitution, Section 59 is to prevent special privileges, favoritism, and discrimination, and to insure equality under the law." *Kentucky Harlan Coal Co. v. Holmes*, 872 S.W.2d 446, 452 (Ky.1994). "[I]n order for a law to be general in its constitutional sense it must meet the following requirements: (1)[i]t must apply equally to all in a class, and (2) there must be distinctive and natural reasons inducing and supporting the classification." *Schoo v. Rose*, 270 S.W.2d 940, 941 (Ky.1954).

St. Luke argues the project criteria improperly subdivide the class of acute care hospitals based on geographic location and discriminate against hospitals located in urban areas. We disagree.

The regulation restricts the class to acute care hospitals without access to an open-heart surgery center. Now underway, the project makes primary angioplasty available at two community hospitals where the procedure was previously more than thirty minutes away. The Cabinet's goal is to evaluate the risks associated with performing an angioplasty procedure to stabilize a patient, then transporting the patient to an open-heart surgery center. While St. Luke argues that the project favors rural areas, we must point out that urban residents, unlike rural residents, already have immediate access to comprehensive cardiac care centers. Furthermore, despite St. Luke's argument to the contrary, both the two-hospital limitation and thirty-minute requirement are reasonable in light of the inherent risks of the project, including increased patient mortality.

"Where the classification enacted by the legislature in the statute has a reasonable basis, such law does not constitute special or local legislation within the prohibition of Section 59 of the Kentucky Constitution nor does it deny the equal protection guaranteed by the United States Constitution." *Kentucky Harlan Coal Co.*, 872 S.W.2d at 452.

We conclude the selection criteria promulgated by the Cabinet do not constitute special or local legislation, as the classification is "reasonable, natural, and consistent with the legitimate purpose of the government." *Id., quoting Commonwealth v. Hillside Coal Co.*, 109 Ky. 47, 58 S.W. 441 (1900).

## IV. Equal Protection

St. Luke contends the regulation arbitrarily discriminates against urban hospitals in violation of § 2 and § 3 of the Kentucky Constitution.

"A statute involving the regulation of economic matters or matters of social welfare comports with both due process and equal protection requirements if it is rationally related to a legitimate state objective." *Wynn v. Ibold, Inc.*, 969 S.W.2d 695, 696 (Ky.1998).

St. Luke argues that the methodology of the project is flawed, and the project is contrary to the safety concerns embodied in the State Health Plan. Despite St. Luke's argument, we are not persuaded that the regulation is unconstitutional.

We are mindful that, "as a practical matter, nearly all legislation differentiates in some manner between different classes of persons and the Equal Protection Clause does not forbid such classification per se." *Natural Resources and Environmental Protection Cabinet v. Kentec Coal Co., Inc.*, 177 S.W.3d 718, 725 (Ky. 2005).

In the case at bar, the record shows that the Cabinet held a lengthy review process and considered numerous factors when drafting the regulation. It is clear the Cabinet limited participation in the project

to minimize exposure to the inherent risks. Likewise, in the interest of public health, it is reasonable for the Cabinet to study the feasibility of expanding emergency cardiac services to rural areas. We conclude the regulation survives rational basis scrutiny.

For the reasons stated herein, the Franklin Circuit Court's order of summary judgment is affirmed.

ALL CONCUR.