W.B., An Adult Citizen of Jefferson County, Kentucky, Appellant.

v.

COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES, Department for Community Based Services, A Kentucky Administrative Agency, Appellees.

No. 2011–SC–000202–DG.

Supreme Court of Kentucky.

Dec. 20, 2012.

J. Fox Demoisey, Demoisey Law Office, PLLC, Louisville, KY, for Appellant.

Erika Saylor, Cabinet for Health and Family Services, Louisville, KY, for Appellees.

Opinion of the Court by Justice VENTERS.

Appellant, W.B., an adult citizen residing in Jefferson County, Kentucky, appeals from a decision by the Court of Appeals which affirmed the Jefferson Circuit Court's denial of his Petition for a Declaration of Rights pursuant to KRS 418.040. The petition sought a declaration that the statutory and regulatory provisions associated with the Cabinet for Health and Family Services and its sub-unit the Department of Community Based Services' (DCBS) process for investigating allegations of child abuse are unconstitutional. He challenges also the constitutionality of the process whereby a social worker investigates and "substantiates" such allegations, the process for challenging a "substantiated" allegation, the failure of the process to provide for a jury trial, and the listing of the accused's name in a centralized database pursuant to this process. Appellant's KRS 418.040 petition thus presents a facial constitutional challenge to the Cabinet's administrative process, and the underlying administrative action is being held in abeyance pending the conclu-sion of the present proceeding. The trial court found the processes challenged by Appellant to be constitutional, and the Court of Appeals agreed.

We do not have before us an actual record of an administrative case contextualizing the operations of the statutory and regulatory process as it functions in day-to-day practice, which is the very nucleus of our review, and the absence of such a record unduly hinders our ability to review the constitutional issues presented. Therefore, based upon cautiously weighed prudential considerations, we conclude that this declaratory action is not ripe for our review at this time. Rather, we must await the conclusion of the administrative proceedings prior to our delving into the constitutional issues presented in this case.

Because we regard the issues presented in this case as not ripe for our review, we vacate the decision of the Court of Appeals and remand the cause to the Jefferson Circuit Court with directions that it hold this KRS 418.040 action in abeyance until the conclusion of the underlying administrative proceedings. The circuit court should then consider the present proceeding in light of the results obtained in the administrative case. We further instruct the Cabinet that, even if Appellant does not prevail in the administrative proceedings, it should not list his name in the centralized child abuse database until the conclusion of the KRS 418.040 proceedings we now abate. By that means, Appellant may fully complete his constitutional challenge to the administrative process before the listing of his name in a child abuse registry renders the review moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2008, an unidentified caller to a hotline maintained by the Jefferson County DCBS reported an allegation that

Appellant had sexually abused a minor child. DCBS referred the case to the Cabinet for investigation, which then assigned a social worker to do the actual inquiry pursuant to Cabinet regulations. *See* 922 KAR 1:330 § –9.[1] Pursuant to the procedure set out in 922 KAR 1:330, an investigation was initiated, and on September 4, 2008, a forensic interview was conducted by the Jamestown Advocacy Center, at which time the alleged victim and the victim's siblings were interviewed. The interviews were recorded by video. On the same day a police detective interviewed the child's mother and father; a detective similarly interviewed Appellant regarding the allegation about three weeks later. It is worth noting that, so far as we can tell, no criminal charges have yet been brought against Appellant as a result of the police investigation into the allegations.

Following the completion of the social worker's investigation, which Appellant alleges he was given no opportunity to participate in, the social worker concluded that the allegation of sexual abuse was "substantiated" (meaning established by a preponderance of the evidence) pursuant to 922 KAR 1:330 § 1(9).[2] Appellant was advised by the Cabinet of the result of the investigation by letter dated December 8, 2008, as well as his right to appeal the determination. *Id.* at § 9(5). Absent an overturning of the Cabinet's finding substantiating the allegation pursuant to the

appeals process, the sanction to be imposed against Appellant will be the entry of his name into the Cabinet's central registry pursuant to 922 KAR 1:470.[3]

Pursuant to 922 KAR 1:330 § 10(1), Appellant gave notice of his intent to appeal the Cabinet's finding substantiating the allegation. This provision provides for an administrative hearing, culminating in the issuance of a final order by the Commissioner of DCBS. Section 10(3) of the regulation further provides, if necessary, for an additional appeal to the circuit court pursuant to the normal administrative appeals provisions of KRS 13B.140 and KRS 13B.150. The administrative proceedings, however, are now in abeyance pending conclusion of this proceeding.

In coordination with his administrative appeal, and as a second line of attack upon the underlying allegation, Appellant filed a complaint in Jefferson Circuit Court, the present action, which, though not specifically denominated as a declaratory judgment action pursuant to KRS 418.040, has been uniformly treated as such by the parties and courts in the proceedings below, and so we, too, follow this nomenclature.

In his declaratory action, Appellant challenged the constitutionality of the several statutes and regulations providing for how the Cabinet substantiates allegations of child abuse and how an accused may

---

1. When an allegation of child abuse or neglect is made, an investigation is undertaken by the Cabinet for Health and Family Services, pursuant to the provisions of the Kentucky Unified Juvenile Code, KRS Chapters 600 to 645. DCBS is the specialized unit within the Cabinet that conducts child abuse, neglect, and dependency investigations. It was created in 1998 in an effort to regionalize child protective services, and it maintains offices in each county within Kentucky.

2. 922 KAR 1:330 § 1(9) provides as follows: " 'Substantiated' means: (a) An admission of abuse, neglect, or dependency by the person responsible; (b) A judicial finding of child abuse, neglect, or dependency; or (c) A preponderance of evidence exists that abuse, neglect, or dependency was committed by the person alleged to be responsible."

3. Kentucky adopted these procedures for the purpose of implementing the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. §§ 5101–5116.

contest and appeal that substantiation.[4] Appellant asserted that the United States and Kentucky Constitutions both recognize and protect his interest in his reputation; that having his name placed on Kentucky's registry of substantiated child abusers would affect that interest; and that procedural due process entitled him, at the administrative level, to have a jury decide whether the allegation of child abuse was substantiated by a preponderance of evidence. Appellant also raised other procedural due process grounds. More specifically, Appellant argued that (1) the applicable law and procedures relating to how the Cabinet substantiates child abuse allegations impermissibly shift the burden of proof to him; (2) the results of those proceedings could impact criminal or civil proceedings that might be filed in the future; (3) the applicable procedures denied him certain videotapes of the interviews that DCBS conducted with the minor child and others which it used as a basis to substantiate the alleged abuse; (4) the procedure denied him the right to have the child evaluated in an effort to test the credibility of the child's accusations; (5) the procedure violated the separation of powers doctrine by allowing a circuit court to uphold the final administrative determination upon a finding that it was based on "substantial evidence" as opposed to a "preponderance of the evidence"; and that (6) the procedure was otherwise arbitrary and capricious.

In its own review of this matter, the Jefferson Circuit Court upheld the constitutionality of the statutes, regulations, and appellate procedures in question, and, in a January 25, 2010 order, the circuit court dismissed Appellant's declaratory judgment petition pursuant to CR 12.02(f) for failure to state a claim upon which relief could be granted.

The Court of Appeals affirmed the circuit court's determinations. We granted discretionary review to further examine to the constitutional issues presented. However, as further discussed below, due to the absence of an administrative record to provide context for our examination of the functioning, of the process under challenge, we will exercise our discretionary authority to decline to review the issues presented at this time based upon prudential ripeness considerations, and will instead await the conclusion of the administrative process before delving into the substantial constitutional issues presented for our review.

## II. FOR PRUDENTIAL REASONS WE DECLINE TO EXERCISE JURISDICTION OVER THE CONSTITUTIONAL ISSUES PRESENTED AT THIS TIME

■ This case presents a situation where a defendant in an administrative action has interrupted the administrative process by way of a declaratory judgment action and diverted the main proceedings into the judicial system so as to challenge the very functioning and legality of the administrative proceedings already underway. KRS 418.040 provides as follows:

> In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

---

4. Specifically, Appellant challenges the constitutionality of KRS 13B.150(2)(c); 922 KAR 1:330 §§ 9 and 10; 922 KAR 1:470; and 922 KAR 1:480.

However, KRS 418.065 clearly anticipates that there will be occasions when it will not be best to address the controversy at the time of the petition, and so authorizes the courts to defer consideration until the circumstances are more favorable for a resolution of the issue presented:

> *The court may refuse to exercise the power to declare rights,* duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or *in any case where the declaration or construction is not necessary or proper at the time under all the circumstances.* The appellate court in its consideration of the case, shall not be confined to errors alleged or apparent in the record. When, in its opinion, further pleadings or proof is necessary to a final and correct decision of the matters involved, or that should be involved, it shall remand the case for that purpose; *or if in its opinion the action is prematurely brought, or where a ruling in the appellate court is not considered necessary or proper at the time under all the circumstances, it may direct a dismissal without prejudice in the lower court.*

KRS 418.065 (emphasis added); *see also* KRS 418.045 (providing a non-exhaustive list of the types of claims for which declaratory relief is available); and *Mammoth Medical, Inc. v. Bunnell,* 265 S.W.3d 205, 210 (Ky.2008) ("the Court may refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or construction is not necessary or proper at the time under all the circumstances.").

Here, there is clearly an actual, justiciable controversy suited to the declaratory judgment process. The parties are embroiled in an administrative process which may lead to Appellant's listing on a child-abuser registry, and they further disagree upon whether the statutory and regulatory provisions guiding the administrative proceedings are constitutional. Further, absent success in this declaratory judgment action, Appellant will have to endure the administrative proceedings before he would be able to raise the constitutional issues that are his primary concern.

■ It bears emphasis that Appellant's declaration of rights action is not explicitly barred by the exhaustion of remedies doctrine. A well-settled principle of administrative law is that a party must exhaust his administrative remedies before seeking relief within the judicial process. KRS 13B.140(2) ("A party may file a petition for judicial review only after the party has exhausted all administrative remedies available within the agency whose action is being challenged, and within any other agency authorized to exercise administrative review."); *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet,* 133 S.W.3d 456, 471 (Ky.2004); *Goodwin v. City of Louisville,* 309 Ky. 11, 215 S.W.2d 557, 559 (1948) ("where an administrative remedy is provided by the statute, relief must be sought from the administrative body and this remedy exhausted before the courts will take hold. The procedure usually is quite simple. Ordinarily the exhaustion of that remedy is a jurisdictional prerequisite to resort to the courts."). However, an exception to the exhaustion doctrine exists:

> Exhaustion of administrative remedies is not necessary when attacking the constitutionality of a statute or a regulation as void on its face. This is because an administrative agency cannot decide constitutional issues. Thus, to raise the facial constitutional validity of a statute

or regulation at the administrative level would be an exercise in futility. *Commonwealth v. DLX, Inc.*, 42 S.W.3d 624, 626 (Ky.2001) (internal citations omitted); *Goodwin*, 215 S.W.2d at 559 ("direct judicial relief is held available without exhaustion of administrative remedies where the statute is charged to be void on its face, or where the complaint raises an issue of jurisdiction as a mere legal question, not dependent upon disputed facts, so that an administrative denial of the relief sought would be clearly arbitrary."). Accordingly, here, the exhaustion of remedies doctrine does not bar Appellant's declaration of rights petition because he is seeking to challenge the statutes and regulations underpinning the underlying administrative process. *St. Luke Hospitals, Inc. v. Com., Cabinet for Health and Family Services*, 254 S.W.3d 830 (Ky.App. 2008) ("[A] hospital was not required to exhaust all administrative remedies before the Cabinet for Health and Family Services, before challenging [by way of a declaratory judgment action] the constitutionality of a regulation that precluded its eligibility to participate in an angioplasty project.")

■ Nevertheless, "there are situations where, even though an allegedly injurious event is certain to occur, the Court may delay resolution of constitutional questions until a time closer to the actual occurrence of the disputed event, when a better factual record might be available." *Blanchette v. Connecticut General Ins. Corporations*, 419 U.S. 102, 143–44, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). "Further, to the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint and cannot be bound by the wishes of the parties." *Id.* at 138, 95 S.Ct. 335 (footnote omitted). Here, the adminis-

trative process is indeed "certain" to occur in the absence of success by Appellant in the declaratory judgment proceedings, nevertheless, this is clearly one of those occasions when a better factual record would be indispensable to our resolution of the constitutional issues before us. For example, without an actual administrative proceeding to review, it would be sheer speculation to suppose that Appellant is correct that his defense will be hindered by his alleged inability to access the videotaped interviews associated with the investigation.

■ Further, many of these questions are prematurely raised in this litigation because of the rather complex interworkings of the various provisions under challenge. "Even where some of the provisions of a comprehensive legislative enactment are ripe for adjudication, portions of the enactment not immediately involved are not thereby thrown open for a judicial determination of constitutionality. 'Passing upon the possible significance of the manifold provisions of a broad statute in advance of efforts to apply the separate provisions is analogous to rendering an advisory opinion upon a statute or a declaratory judgment upon a hypothetical case.'" *Communist Party of United States v. Subversive Activities Control Bd.*, 367 U.S. 1, 71, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961) (quoting *Watson v. Buck*, 313 U.S. 387, 402, 61 S.Ct. 962, 85 L.Ed. 1416 (1941)). Contrary to this principle, Appellant's declaration of rights action would compel us to prematurely evaluate the Cabinet's complicated administrative process without the benefit of an actual case illustrating the Cabinet's interpretation and implementation of the regulatory scheme.

■ Additionally, two of the most fundamental rules applied by the courts when considering constitutional challenges are

"one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. These rules are safe guides to sound judgment. It is the dictate of wisdom to follow them closely and carefully." *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners,* 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885); *Communist Party of United States,* 367 U.S. at 71–72, 81 S.Ct. 1357. In part, this principle is based upon the realization that, by the very nature of the judicial process, courts can most wisely determine issues precisely defined by the confining circumstances of particular situations. *Parker v. County of Los Angeles,* 338 U.S. 327, 333, 70 S.Ct. 161, 94 L.Ed. 144 (1949) ("The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity."). Here, resolution of the administrative proceedings in Appellant's favor would avoid the necessity of addressing the constitutional issues under challenge. Therefore, balanced prudential considerations strongly favor deferment of our consideration of these issues until the administrative procedures are completed because, first, the constitutional question may thereby be rendered moot and, second, allowing the administrative proceeding to run its course will provide a practical illustrative case by which we may judge the statutes and regulations underlying the proceedings.

■ Moreover, being at this juncture deprived of an actual administrative proceeding to review, were we to consider this case now, we would in large part be confined to engaging in an academic and abstract view of the Cabinet's regulatory scheme. The basic rationale of the ripeness requirement is "to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]" *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Ripeness accordingly prevents courts from interfering with legislative enactments until it is necessary to do so, and thus enhances the quality of judicial decision-making by ensuring that cases present courts an adequate record to permit effective review and decision-making. *Id.* In this vein, ripeness involves weighing two factors: (1) the hardship to the parties of withholding court consideration; and (2) the fitness of the issues for judicial review. *See Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507; *Artway v. Attorney General of New Jersey,* 81 F.3d 1235, 1246–47 (3d Cir. 1996). Here, without a specific and developed factual record, we are presented with little more than an abstract disagreement, and, moreover, deferment will result in little hardship to the parties beyond those involved in any other case where the issues are not ripe for decision. *Buckley v. Wilson,* 177 S.W.3d 778, 781 (Ky.2005) (holding, in context of a writ action, that the delays inherent in every lawsuit and appeal do not constitute an inadequate remedy by appeal).

In *Matherne v. Gray Ins. Co.,* the Supreme Court of Louisiana succinctly described the principle upon which we now rely:

> Generally, the ripeness doctrine is viewed as being both constitutionally required and judicially prudent. "The prudential restrictions result from the fact that most courts would rather avoid speculative cases, defer to finders of fact with greater subject matter expertise, decide cases with fully-developed records, and avoid overly broad opinions,

even if these courts might constitutionally hear a dispute."

. . . .

[T]here is no doubt that this Court has the power and authority to tackle the constitutional issue presented by the district court's ruling. This, however, does not mean that we are required to do so. We are only obligated to rule if the procedural posture of the case and the relief sought by the appellant demands that we do so. Absent such compulsion, ruling on the constitutionality at this juncture lies within this Court's discretion.

661 So.2d 432, 435–36 (La.1995) (citations omitted).

█ Simply put, there is no compelling reason for us to address the constitutional issues presented in this case in the absence of a well-developed administrative record by which we may understand the actual, as opposed to the hypothetical and abstract, application of the process under review. Further, while neither the parties nor the lower courts have raised the issue of ripeness, "[i]t is clear that ripeness may be raised by a court on its own motion, whether the question turns on theories attributed to the constitution or on prudential theories, and whether or not the parties all wish decision on the merits. So long as the court is persuaded that it is unwise to decide, it should not feel compelled to expand [its authorized] domain of ripeness simply to avoid decision; prudence alone can overcome the parties' wishes. But refusal to be controlled by the parties' wishes should be tempered by considering their wishes to the extent of determining the immediacy of the need for decision and the weight of the reasons for deferring decision." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 13B Fed. Prac. & Proc. Juris. § 3532.7 (3d ed.2012) (footnotes omitted); *see also Reic-*

*hert v. State ex rel. McCulloch,* 365 Mont. 92, 278 P.3d 455, 471–72 (2012). In other words, "we may raise the issue of ripeness *sua sponte* even though neither party has discussed it in its briefs." *Local 36 Intern. Ass'n of Firefighters v. Rubin,* 999 A.2d 891, 896 (D.C.2010); *see* Wright, Miller & Cooper, *supra,* § 3532.7. Here, as noted, though not raised by the parties, prudential considerations weigh heavily in favor of our abstaining from deciding the constitutional issues until the completion of the underlying administrative proceedings.

The principle of prudential ripeness is a well-settled legal doctrine which holds that a court of last resort may decline to exercise its jurisdiction and, upon purely prudential grounds, regard an otherwise justiciable controversy as unripe for immediate judicial review. As noted by the United States Supreme Court in *National Park Hospitality Ass'n v. Dep't of Interior.*

Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." The ripeness doctrine is "drawn both from Article III limitations on judicial power and *from prudential reasons for refusing to exercise jurisdiction,*" but, *even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion.*

538 U.S. 803, 807–08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (emphasis added) (citations omitted).

Although initially a doctrine originating in the federal court system, the concept of prudential ripeness has been widely adopted and applied in many of our sister

states and other American jurisdictions.[5] While we have not heretofore had the occasion to invoke the doctrine, the unique circumstances presented warrant that we do so in this matter.[6]

5. DISTRICT OF COLUMBIA—*Local 36 Intern. Ass'n of Firefighters v. Rubin*, 999 A.2d 891, 896 (D.C.2010) (*quoting* Wright, Miller & Cooper, *Federal Practice & Procedure* § 3532.7, at 710 (4th ed. 2008)) ("It is clear that ripeness may be raised by a court on its own motion, whether the question turns on theories attributed to the constitution or on prudential theories, and whether or not the parties all wish decision on the merits.");

IOWA—*Berent v. City of Iowa City*, 738 N.W.2d 193, 204 (Iowa 2007) ("The question of whether state courts should entertain facial challenges to ballot measures prior to an election generally raises an issue of judicial propriety, not jurisdiction. It is a question of prudence, not power.");

LOUISIANA—*Matherne v. Gray Ins. Co.*, 661 So.2d 432, 435–36 (La.1995)("Generally, the ripeness doctrine is viewed as being both constitutionally required and judicially prudent.... There is no doubt that this Court has the power and authority to tackle the constitutional issue presented by the district court's ruling. This, however, does not mean that we are required to do so. We are only obligated to rule if the procedural posture of the case and the relief sought by the appellant demands that we do so.");

MONTANA—*Reichert v. State ex rel. McCulloch*, 365 Mont. 92, 278 P.3d 455, 471–72 (2012) (This limitation on judicial power derives primarily from the Montana Constitution, which limits the courts to deciding only cases and controversies, *but also from the courts themselves, which have adopted discretionary limitations on the exercise of judicial power for prudential reasons.*)(emphasis added.);

NEBRASKA—*See City of Omaha v. City of Elkhorn*, 276 Neb. 70, 752 N.W.2d 137, 145 (2008) ("[W]hen making a ripeness determination, a court must consider, as a jurisdictional matter, whether it can act at a certain time and also, as a prudential matter, whether it should act at that time.");

NEW MEXICO—*Sanchez v. City of Santa Fe*, 82 N.M. 322, 481 P.2d 401, 403 (1971) (One of the "prerequisites of 'actual controversy' warranting consideration in a declaratory judgment action [is that] ... the issue involved must be ripe for judicial determination.");

MICHIGAN—*Michigan Dept. of Social Services v. Emmanuel Baptist Preschool*, 434 Mich. 380, 455 N.W.2d 1, 14 (1990)("The ripeness issue we have addressed is not based upon Article III considerations, but is prudential in nature.");

PENNSYLVANIA—*Treski v. Kemper Nat'l Ins. Companies*, 449 Pa.Super. 620, 674 A.2d 1106, 1113 (1996) ("The rationale for the ripeness doctrine is to prevent premature adjudications." In deciding whether the doctrine of ripeness bars our consideration of a declaratory judgment action, "[t]he court must consider whether the issues are adequately developed for judicial review and what hardship the parties will suffer if review is delayed.");

RHODE ISLAND—*State v. Lead Indus. Ass'n, Inc.*, 898 A.2d 1234, 1238 (R.I.2006) (*citing* 1 Laurence H. Tribe, *American Constitutional Law*, § 3–7, at 313 (3d ed. 2000)) ("Even when a dispute is adequately mature in a constitutional sense, however, subsequent events may sharpen the controversy or remove the need for decision of at least some aspects of the matter. Thus, ripeness doctrine also furthers the prudential policy of judicial restraint from unnecessary decision of constitutional issues' by allowing a determination that a resolution of the dispute should come at a later date,");

TEXAS—*Perry v. Del Rio*, 66 S.W.3d 239, 249–50 (Tex.2001) ("Ripeness concerns not only whether a court *can* act—whether it has jurisdiction—but prudentially, whether it *should*.");

US VIRGIN ISLANDS—*Turnbull v. Twenty-Sixth Legislature of the Virgin Islands*, 2006 WL 4158729, at 8 (V.I.Super.2006); *Virgin Islands Gov't Hosp. and Health Facilities Corp. v. Virgin Islands*, 2008 WL 4560751, at 2 (V.I.2008) (The ripeness doctrine, which stems "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57, n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993), has been recognized and applied by Virgin Islands courts.").

6. Other cases (for example, *Nordike v. Nordike*, 231 S.W.3d 733, 739 (Ky.2007) and *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 270 (Ky.App.2005)) hold that "an unripe claim is not justiciable" and that "the circuit

To summarize, the prudential factors weighing against consideration of the case until the conclusion of the administrative process include the following: (1) the record before us is undeveloped by an actual administrative proceeding providing context to the administrative proceedings thereby hindering our ability to evaluate the administrative process as it works in practice, and deferment will allow development of a full administrative record to facilitate our constitutional review; (2) Appellant may succeed in the administrative process, thereby obviating the need for our consideration of the constitutional issues in the first instance; (3) it is fundamental that constitutional issues should be avoided if possible; (4) deferment would allow the simultaneous examination of a facial challenge to the administrative provisions with an as-applied challenge. Therefore, under the facts now before us, we conclude this case is not ripe for constitutional review.

### III.  CONCLUSION

For the foregoing reasons, we vacate the decision of the Court of Appeals and remand to the circuit court for additional proceedings consistent with this opinion. We further direct that the Cabinet should refrain from listing Appellant on the 922 KAR 1:470 registry until the resolution of the constitutional issues he presents herein.

MINTON, C.J., ABRAMSON, CUNNINGHAM, NOBLE and SCOTT, JJ., concur.  SCHRODER, J., not sitting.

court has no subject matter jurisdiction over [an unripe claim]." *Nordike,* 231 S.W.3d at 739.  Our application of the principle of prudential ripeness is not inconsistent with those holdings.  The courts, both trial and appellate have no authority to adjudicate hypothetical or purely advisory questions.  But, the Supreme Court may deem an otherwise justiciable controversy, such as a declaration of rights action, "unripe" for judicial review when further proceedings in the lower courts or administrative agencies would build the appropriate record required for more meaningful judicial review of the controversy.