RENDERED: APRIL 15, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0136-MR

STEPHANIE GWALTNEY                        APPELLANT

            APPEAL FROM FRANKLIN CIRCUIT COURT
v.         HONORABLE THOMAS D. WINGATE, JUDGE
                 ACTION NO. 19-CI-01014

COMMONWEALTH OF KENTUCKY,
BOARD OF SOCIAL WORK                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Stephanie Gwaltney appeals from a Franklin Circuit Court judgment denying her request for a declaratory judgment. We affirm.

## **FACTUAL AND PROCEDURAL HISTORY**

Stephanie Gwaltney ("Gwaltney") is a licensed clinical social worker. In September 2019, the Kentucky Board of Social Work ("the Board") filed an

administrative complaint against Gwaltney. The Board alleged that, in September 2017, it received a written complaint alleging misconduct by Gwaltney.

The administrative complaint stated a case manager reported receiving a phone call from a former client ("Client") about Gwaltney. Undisputedly, Gwaltney had been Client's counselor for a time when he was at NeuroRestorative – a program which provided services to brain-injured individuals in a residential setting.

According to the administrative complaint, Client told the case manager he had been "involved since 2014" with Gwaltney. Client also claimed that Gwaltney made sexual advances towards him, and that the two of them had been involved romantically and sexually since that time up until September 2017 when they ended the relationship. The administrative complaint noted that Client stated he felt that he was in a vulnerable position and had been taken advantage of by Gwaltney.

The administrative complaint stated that Gwaltney was informed of the complaint against her in September 2017. It also recounted that Gwaltney acknowledged having worked at NeuroRestorative, including providing counseling to Client, who had arrived at a NeuroRestorative home in 2013.

According to the administrative complaint, Gwaltney had also responded to the allegations by stating that:

at her request, [Client] was reassigned to another counselor in mid-2014; that [Client] left NeuroRestorative in October 2014, that in late 2014, [Gwaltney] and Client began a personal relationship; that [Client's] family was friendly with her and aware of the relationship; and that [Gwaltney] and [Client] continued to maintain a personal relationship until September 2017, when they broke up.

(Record ("R."), p. 9.)

The administrative complaint asserted that based on the factual allegations therein, Gwaltney had entered into a romantic and sexual relationship with a client, thus violating KRS[1] 335.150(1)(g) and (6) and 201 KAR[2] 23:080, Sections 1, 2, 3, and 11. It further stated if she was found to have committed the alleged actions by a preponderance of the evidence following an evidentiary hearing, that the Board may impose a disciplinary sanction authorized by KRS 335.150.

Shortly after the administrative complaint was filed, Gwaltney filed a complaint for declaratory judgment in Franklin Circuit Court. Gwaltney requested therein a declaration that Sections 1, 2, 3, and 11 of 201 KAR 23:080 were invalid and unenforceable because they exceeded the scope of KRS 335.150(1)(g) and (6). She argued the Board had exceeded the scope of its regulatory authority in

_____

[1] Kentucky Revised Statutes.

[2] Kentucky Administrative Regulations.

-3-

promulgating regulations "because the statute only prohibits personal or sexual relationships between social workers and clients occurring during care, or while the professional relationship continues to exist between the social worker and client." (R., p. 5.) Gwaltney also requested a declaration that 201 KAR 23:080 violated Kentucky's Constitution because it prohibited personal or sexual relationships between social workers and former clients in violation of "the right to engage in such relationships . . . ." (R., p. 6.)[3]

The Board filed a motion to dismiss the complaint for declaratory judgment, arguing the complaint failed to state a claim upon which relief can be granted. The Board asserted it was unclear whether Gwaltney's complaint alleged a facial challenge to the regulation's constitutionality or an as-applied challenge or both. Nonetheless, the Board argued the trial court action should be dismissed, on two bases: 1) failure to exhaust administrative remedies or 2) the challenged sections of 201 KAR 23:080 being constitutional and otherwise valid.

---

[3] Gwaltney provided notice to the Attorney General of her challenge to the constitutionality of the provisions in 201 KAR 23:080 at issue – both when she filed her complaint in circuit court and when she filed her notice of appeal from the trial court's judgment. *See* KRS 418.075. Nonetheless, nothing was filed by the Attorney General in the trial court action or in this appeal.

Gwaltney argued in her appellant brief and in a brief to the trial court that the challenged portions of 201 KAR 23:080 violated Sections 27 and 28 of the Kentucky Constitution, although her complaint for declaratory judgment did not specify which provisions of the Kentucky Constitution were allegedly violated.

Following further briefing and a hearing, the trial court denied the Board's motion to dismiss by written order. The trial court rejected the Board's argument that the complaint should be dismissed for failure to exhaust administrative remedies. The trial court concluded that Gwaltney could bring her facial challenge to the regulation's constitutionality, citing *W.B. v. Commonwealth, Cabinet for Health and Family Services*, 388 S.W.3d 108, 113 (Ky. 2012). The trial court stated: "As [Gwaltney] has brought a constitutional challenge to a regulation that allegedly expands the Board's power beyond the limits defined by the enabling statute, [Gwaltney's] declaratory judgment action is properly before the Court." (R., p. 91.)

After the trial court denied the motion to dismiss, the Board filed its answer to the complaint. The Board again asserted that the regulation was valid and enforceable. And the Board asserted that the relevant facts and allegations were stated in the administrative complaint, which the Board attached to the answer. The Board also disputed some factual allegations and averments in Gwaltney's complaint in its answer.

After the answer was filed, the parties also filed briefs with the trial court regarding the request for a declaratory judgment. In early 2021, the trial court entered an order denying the request for a declaratory judgment. The trial court noted that Gwaltney received written notice of a scheduled administrative

hearing before filing her petition for a declaratory judgment and that the administrative hearing had been stayed pending resolution of the declaratory judgment action.

The trial court ultimately declined to issue a declaratory judgment because the matter "[was] not ripe for review until the conclusion of the administrative proceeding because the present constitutional challenge could be rendered moot by the end of the administrative proceeding." (R., p. 180; order denying declaratory judgment attached to appellant brief appendix, p. 4.) The trial court noted our Supreme Court's discussion of the prudential ripeness doctrine in *W.B.*, 388 S.W.3d 108. The trial court ultimately declined to address the constitutional challenge:

> This Court can clearly address the constitutional challenge raised by [Gwaltney], but although a factual record is may be [sic] unnecessary for the crux of [Gwaltney's] challenge, the Court's involvement may not be needed because [Gwaltney] may be successful before the administrative tribunal. *W.B.* instructs this Court to avoid constitutional challenges, if possible, until the time is right.

(R., p. 181-82; order denying declaratory judgment, pp. 5-6.) The trial court directed the administrative hearing officer to continue with the administrative proceeding and the order recited that it was final and appealable with no just cause for delay.

Gwaltney filed a timely appeal.  Further facts will be provided as necessary to resolve the issues raised in her appeal.[4]

## ANALYSIS

### Standards Governing Our Review

The trial court denied the request for a declaratory judgment without conducting a bench trial or other evidentiary hearing or issuing findings of fact. Thus, both parties argue that the trial court's declining to issue a declaratory judgment was based solely on its determination of legal – not factual – issues and that a *de novo* standard of review is appropriate.  *See, e.g.*, *Kirilenko v. Kirilenko*, 505 S.W.3d 766, 768 (Ky. 2016) ("Since the issue here is a matter of law, our standard of review is *de novo*.").

---

[4] The appellant brief does not contain a statement regarding if or how issues raised on appeal were preserved for appeal.  *See* Kentucky Rules of Civil Procedure ("CR") 76.12(4)(c)(v). Though it appears that issues raised on appeal were preserved by argument to the trial court based on our review of the record, we remind counsel of the importance of complying with the Civil Rules and we direct counsel's attention to the brief checklists and appellate practice handbook available as resources on our Court website.  https://kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx.  (Last visited Feb. 4, 2022.)

Appellate courts may regard issues as unpreserved and thus review only for manifest injustice when an appellant fails to provide a preservation statement – unlike less serious failures to comply with other formatting rules.  *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).  Though we elect not to review solely for manifest injustice here, counsel is advised to take greater care to comply with briefing rules in the future.

While we agree that the trial court's interpretation of legal authority is subject to *de novo* review, the trial court's refusal to issue a declaratory judgment here also represents its exercise of discretion under KRS 418.065:

> The court *may* refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or construction is not necessary or proper at the time under all the circumstances.

(Emphasis added.)[5]

Because KRS 418.065 recognizes certain circumstances where a trial court *may*, but is not required to, refuse to issue a declaratory judgment, good arguments could also be made for reviewing the refusal to issue a declaratory judgment under the abuse of discretion standard. *See Mammoth Medical, Inc. v. Bunnell*, 265 S.W.3d 205, 209-10 (Ky. 2008) (recognizing court's broad discretion

---

[5] KRS 418.065 also contains provisions regarding appellate review:

> The appellate court in its consideration of the case, shall not be confined to errors alleged or apparent in the record. When, in its opinion, further pleadings or proof is necessary to a final and correct decision of the matters involved, or that should be involved, it shall remand the case for that purpose; or if in its opinion the action is prematurely brought, or where a ruling in the appellate court is not considered necessary or proper at the time under all the circumstances, it may direct a dismissal without prejudice in the lower court.

to grant declaratory relief, as well as discretion under KRS 418.065 to refuse to grant declaratory relief under certain circumstances).

Whether reviewing *de novo* or for abuse of discretion, we discern no reversible error in the trial court's refusal to issue a declaratory judgment here. Furthermore, to the extent that our reasoning differs from that expressed by the trial court in its judgment, we have authority to affirm a trial court's judgment based on independent grounds supported by the record. "If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds." *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 496 (Ky. 2014). *See also Commonwealth v. Mitchell*, 610 S.W.3d 263, 271 (Ky. 2020) ("While reversal of a lower court is restricted, an appeals court may affirm for any reason supported by the record, and the appellee may present alternative reasons justifying the decision of the trial judge.").

### Regulatory Provisions and Statutes at Issue

The portions of 201 KAR 23:080 (entitled Ethical Code of Conduct) challenged by Gwaltney are identified in bold type:

Section 1. Definitions.

(1) "Client" means:

    (a) An individual, family, or group who directly receives social work services from a social worker;

. . .

(2) A person identified as a client pursuant to subsection (1) of this definition **shall be deemed to continue to be a client for a period of five (5) years following the last date of service** rendered to the person.

(3) "Dual relationship" means a social, business, or personal relationship between a social worker and a client that coexists with the professional-client relationship between the social worker and the client.

Section 2.  Client Relationships. . . .

(3) **A client who directly receives the social work service shall be deemed to continue to be a client for a period of five (5) years following the last date of service actually rendered**.

Section 3.  Responsibility to Clients.

(1) A social worker shall promote the well-being of a client and, if required by law, the safety and well-being of an individual whose life might be affected by the client's behavior or circumstance.

Section 11.  Dual Relationships.

(1) A social worker shall not enter into a dual relationship with a client if the relationship might:

(a) Impair the social worker's professional judgment;

(b) Incur the risk of exploitation of the client; or

(c) Otherwise violate a provision of this administrative regulation.

(2) If a dual relationship cannot be avoided and if it does not impair the social worker's professional judgment,

incur a risk of exploitation of the client, or otherwise violate a provision of this administrative regulation, the social worker shall take appropriate professional precautions to ensure that judgment is not impaired and exploitation does not occur.

(3) A social worker shall not obtain or engage the service of a client if obtaining or engaging the service might:

    (a) Impair the social worker's professional judgment;

    (b) Incur the risk of exploitation of the client; or

    (c) Otherwise violate a provision of this administrative regulation.

(4) A social worker shall not engage in sexual intimacy or contact with a client or **former client**.

(Emphasis added.)

Gwaltney argues that the statute which enabled the Board to promulgate regulations such as 201 KAR 23:080 is KRS 335.150, providing in pertinent part:

(1) The board may revoke, suspend, or refuse to issue or renew; impose probationary or supervisory conditions upon; impose an administrative fine; issue a written reprimand or admonishment; or any combination of actions regarding any applicant, license, or licensee upon proof that the applicant or licensee has:

. . . .

    (g) Violated the code of ethical conduct as set forth by the board by promulgation of an administrative regulation;

. . . .

(6) Upon proof substantiating that sexual contact occurred between a social worker licensed by the board and a client while the client was under the care of or in a professional relationship with the social worker, the social worker's license may be revoked or suspended with mandatory treatment of the social worker as prescribed by the board. The board may require the social worker to pay a specified amount for mental health services for the client which are needed as a result of the sexual contact.

The Board argues that KRS 335.150(6) is not the enabling statute for the Board's promulgating 201 KAR 23:080. It argues that the main enabling statute is KRS 335.070, recognizing the Board's powers including issuing licenses and administering discipline and specifically providing: "(3) The board may promulgate administrative regulations pursuant to KRS Chapter 13A to carry out the provisions of KRS 335.010 to 335.160 and KRS 335.990." The Board further contends: "KRS 335.070 and KRS 335.150[(1)](g), when read together, give the board the ability to promulgate ethical regulations without any specified restrictions." (Appellee brief, p. 20.)

We agree to the extent that we construe KRS 335.070(3) and KRS 335.150(1)(g) together to enable the Board to promulgate regulations – including one setting forth an ethical code of conduct. But we need not reach whether this authority to promulgate regulations is subject to any specific restrictions to resolve

the key issue on appeal – whether the trial court committed reversible error by declining to issue a declaratory judgment before the administrative hearing concluded.

**No Reversible Error in Trial Court's Refusal to Issue Declaratory Judgment**

Gwaltney claims that the trial court erred in declining to issue a declaratory judgment. She points out that the trial court had denied the motion to dismiss based on *W.B.*'s holding that exhaustion of remedies was not required for asserting a facial constitutional challenge. She cites authority in her appellant brief arguing that exhaustion of remedies is not required before the trial court could properly consider her constitutional challenge to the regulatory provisions.

The trial court expressed its awareness, however, that exhaustion of remedies was not required for it to have authority to consider the facial constitutional challenge in its order denying the motion to dismiss – and also, though perhaps less clearly, in its order denying declaratory relief. But it denied declaratory judgment for other grounds discussed in *W.B.*, namely, the prudential ripeness doctrine.

Gwaltney suggests it was inconsistent for the trial court to cite *W.B.* as authority for refusing to issue a declaratory judgment based on prudential ripeness concerns – after denying the motion to dismiss based on *W.B.*'s holding that

exhaustion of administrative remedies was not required before considering a facial constitutional challenge. We disagree.

Our Supreme Court recognized that even though failure to exhaust administrative remedies did not bar a declaratory judgment action raising a facial constitutional challenge, a court may sometimes properly delay resolution of such constitutional issues "until a time closer to the actual occurrence of the disputed event, when a better factual record might be available." *W.B.*, 388 S.W.3d at 113 (quoting *Blanchette v. Connecticut General Ins. Corporations*, 419 U.S. 102, 143-44, 95 S. Ct. 335, 338, 42 L. Ed. 2d 320 (1974)).

Gwaltney contends that the trial court erred in failing to recognize an important distinction between this case and *W.B.*; that *W.B.* concerned a complicated administrative process for which a better factual record (*i.e.*, administrative record) would aid the court in understanding the administrative agency's interpretation of its regulations. *See id.* Gwaltney characterizes her case, however, as a simple direct facial challenge to a regulation which does not require the examination of complex regulatory schemes or an agency's nuanced interpretation of its own regulations. As such, she argues her case should be routinely held ripe under *Goodwin v. City of Louisville*, 309 Ky. 11, 215 S.W.2d 557 (1948) and *St. Luke Hospitals, Inc. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 830 (Ky. App. 2008).

-14-

But these cases cited by Gwaltney discuss how a declaratory action should not be dismissed for failure to exhaust administrative remedies when a facial constitutional challenge is raised. These cases do not discuss whether a court might delay resolution of constitutional issues and decline to issue a declaratory judgment at the present time under KRS 418.065 or the prudential ripeness doctrine – despite the court's having authority to rule on such issues.

Gwaltney points out that because administrative agencies cannot determine constitutionality, it is futile to raise the issue of constitutionality in administrative proceedings. *See St. Luke*, 254 S.W.3d at 833 (citing *Commonwealth v. DLX, Inc.*, 42 S.W.3d 624, 626 (Ky. 2001)) ("Despite the Cabinet's argument to the contrary, it is apparent that St. Luke challenges the facial constitutionality of the regulation. Consequently, it would have been futile for St. Luke to participate in the administrative process."). Arguing that there is no necessity here for an administrative record to clarify the agency's interpretation of its own regulation or other legal issues, Gwaltney asserts the issue before the trial court was simple: "whether the Board's expansive definition of 'client,' and prohibition against intimate relationships between social workers and former clients exceeds its authority under its enabling statute." (Appellant brief, p. 9.) And she points to the trial court's seeming admissions that it had authority to

-15-

address the constitutional issue and that a factual record might not be strictly

necessary to opine on the facial challenge in its order:

> This Court can clearly address the constitutional challenge raised by [Gwaltney], but although a factual record is may be [sic] unnecessary for the crux of [Gwaltney's] challenge, the Court's involvement may not be needed because [Gwaltney] may be successful before the administrative tribunal.

(R., pp. 181-82; order denying declaratory judgment, pp. 5-6.)

We construe this statement as the trial court's recognizing that the

action was not barred for failure to exhaust administrative remedies yet still

declining to exercise its authority to rule on the constitutional challenge at the

present time – albeit based simply on the expressed reason that Gwaltney might

prevail at the administrative hearing. The mere possibility of Gwaltney's

prevailing in the administrative proceeding may not seem sufficient, standing

alone, to decline to issue a declaratory judgment on her constitutional challenge

considering the prudential ripeness discussion in *W.B.*[6] But the trial court is not off

base in stating: "*W.B.* instructs this Court to avoid constitutional challenges, if

---

[6] The trial court interpreted *W.B.* to instruct courts to hold off on ruling on constitutional challenges until the time is right, citing *W.B.*, 388 S.W.3d at 117 – where the Supreme Court listed four "prudential factors weighing against consideration of the case until the conclusion of the administrative process" – one of which was the possibility the appellant might prevail in the administrative hearing.

possible, until the time is right." (R., p. 182; order denying declaratory judgment, p. 6.)  *See W.B.*, 388 S.W.3d at 113:

> there are situations where, even though an allegedly injurious event is certain to occur, the Court may delay resolution of constitutional questions until a time closer to the actual occurrence of the disputed event, when a better factual record might be available.  Further, to the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint and cannot be bound by the wishes of the parties.

(Internal quotation marks and citations omitted.)[7]

As recognized by our Supreme Court in *W.B.*, "KRS 418.065 clearly anticipates that there will be occasions when it will not be best to address the controversy at the time of the petition, and so authorizes the courts to defer consideration until the circumstances are more favorable for a resolution of the issue presented[.]" *Id*. at 112.  *See also Mammoth Medical*, 265 S.W.3d at 210 (citing KRS 418.065).

Though perhaps for slightly different reasons than that expressed in the trial court's written order, we discern no reversible error in the trial court's conclusion that the time was not right to rule on the constitutional challenge here.

---

[7] Our Supreme Court quoted from portions of the United States Supreme Court opinion in *Blanchette*, 419 U.S. 102, 95 S. Ct. 335.  *W.B.*, 388 S.W.3d at 113.

-17-

The trial court could have reasonably concluded the time was not right to rule on the constitutional challenge – not just because of any possibility that Gwaltney might prevail in the administrative proceeding – but because resolution of the administrative complaint might not depend on resolving the constitutionality of the challenged regulatory provisions.

Despite Gwaltney's insistence to the trial court and to this Court that there was no dispute that her personal relationship with Client began after she ceased providing professional services to him, the Board frequently disputed this factual assertion based on our review of the record.[8] The Board asserted in its motion to dismiss that Gwaltney "did in fact engage in prohibited sexual intimacy with a client, which began, not years later, but at most a few months after providing services to the client in a clinical residential environment for traumatic brain injury patients." (R., p. 22; motion to dismiss p. 7.)

---

[8] The introduction to the Board's appellee brief states: "The issues herein are based in law, rather than in fact. . . ." (Appellee brief, p. i.) However, we construe this statement as recognizing that there were no factual findings issued by the trial court or the administrative hearing officer for us to review, rather than suggesting there were never any factual disputes.

The Board asserted in its brief that, despite Gwaltney's assertion that no personal relationship began until after she ceased providing services to Client, "the complaint and investigation included information indicating that the relationship with the client began while he was still a patient at her facility and while she was providing him care." (Appellee brief, p. 7.) And the Board argued that if that information was correct, the whole declaratory judgment argument was moot and there was no reason to address whether the challenged portions of 201 KAR 23:080 were constitutional or otherwise valid until a fact-finder could hear evidence and find when the relationship began.

-18-

Gwaltney's response argued that the aforementioned quote from page 7 of the motion to dismiss meant that the Board "acknowledges that this relationship began after the professional relationship ended." And she claimed therein that the administrative complaint did not allege "a simultaneous professional and romantic relationship." (R., p. 39.)

In the Board's reply to this response, the Board disputed Gwaltney's assertion that it had admitted that the personal relationship began after the professional relationship ended. The Board also asserted therein that Gwaltney's vague timeline recollections created a need to resolve some fact issues through the administrative fact-finding process and suggested that remand to the administrative agency was in order if the court did not grant the motion to dismiss:

> [Gwaltney] provides a vague timeline couched in murky language such as "mid 2014" and "late 2014" and then misstates in her response that the Board "acknowledges that this relationship began after the professional relationship ended." This is false. The Board's motion illustrates (in the absence of an evidentiary hearing) the impreciseness of [Gwaltney's] fact-recall, yet closeness in proximity of time between her sexual relationship and counseling, is "at most" a few months. No concession occurred, but the language does effectively underscore the speculation and guesswork at play that could be resolved through the administrative hearing process.
>
> This case is fact driven, and in the absence of outright dismissal, remand would serve to establish a comprehensive record for this Court's later review and benefit.

(R., p. 81) (footnotes omitted).

In paragraph 6 of its answer to the trial court complaint, the Board denied the allegations in paragraph 6 of Gwaltney's trial court complaint including the allegation: "The relationship at issue did not occur while the individual was under the care of, or in a personal relationship with [Gwaltney]." (R., p. 2.) In its response to Gwaltney's brief to the trial court, the Board indicated the existence of a factual dispute about when exactly the personal relationship began. The Board asserted that evidence would show "Gwaltney made many sexual advances toward this client, multiple times, to the point of leaving the NeuroRestorative facility with the client under the pretext of visiting a shopping mall, but instead taking the client to her home." (R., p. 129.) The Board argued: "Gwaltney's carefully crafted rendition of events wherein she requested reassignment in 'mid-2014' but did not engage in a 'personal relationship' with this client until 'late 2014' simply did not pass the smell test." (R., p. 142.)

So, the Board requested that the trial court "hold this matter in abeyance to allow the administrative process to proceed, which would produce facts dispensing with the need for the Court to entertain Gwaltney's novel constitutional claim." (R., p. 142.) In the alternative, the Board requested an evidentiary hearing before the trial court to "dispense with the need to rule upon Gwaltney's constitutional challenge to existing Kentucky law." (R., p. 142)

(quoting *Baker v. Fletcher*, 204 S.W.3d 589, 597-98 (Ky. 2006)) ("the long-standing practice of this Court is to refrain from reaching constitutional issues when other, non-constitutional grounds can be relied upon.").

In her reply brief to the trial court, Gwaltney contended that the Board had not previously claimed "that the romantic relationship between Ms. Gwaltney and the former patient began during their professional relationship" (R., p. 165), and argued the "undisputed evidence" showed the two "were in a romantic relationship some months after the professional relationship ended . . . ." (R., p. 166.) Gwaltney argued that the sole issue before the trial court was whether the Board exceeded its authority by defining a client as anyone the social worker had provided services to within the last five years and by providing for discipline of "practitioners who engage in relationships with former clients." (*Id.*)

The case was submitted for final adjudication to the trial court without an evidentiary hearing, notwithstanding any factual disputes. The trial court declined to issue the declaratory judgment and directed that the administrative hearing process resume.

Based on our review of the record, resolution of the administrative complaint against Gwaltney may not hinge on application of 1) the expansive definition of client, including an individual who received services from the social worker during the preceding five years, nor on 2) the prohibition against a social

-21-

worker's having an intimate relationship with a former client. Instead, depending on the fact-finder's findings after the presentation of evidence at an administrative hearing, any discipline might not depend on either of the two provisions.

Possibly the administrative fact-finder might conclude that the personal relationship began during the period in which Gwaltney was directly providing services to Client, for example. *See* 201 KAR 23:080, Section 1(1) (unchallenged definition of client as an individual directly receiving services from a social worker). In that case, the challenged portions of 201 KAR 23:080 might not even come into play in resolving the administrative complaint.

As the Board points out, if the fact-finder finds the relationship began while Client was receiving services from Gwaltney, Gwaltney would not be injured by application of the prohibition against intimate relationships with former clients or the expansive definition of a client including one who received the social worker's professional services within the past five years. Instead, any discipline would stem from the unchallenged prohibition against intimate relationships with **current** clients (under the unchallenged definition of clients as those currently receiving a social worker's professional services).[9]

---

[9] If on the other hand, any discipline imposed does stem from application of the prohibition against relationships with former clients or from application of the expansive definition of clients as including those who received services during the preceding five years, nothing in this Opinion should be taken to prevent Gwaltney from again challenging the constitutionality of these provisions.

In short, the record before us indicates a **factual dispute** about when Gwaltney's relationship with Client began – which has not yet been resolved by a fact-finder following an evidentiary hearing.  The Board states its intention to proceed with an administrative hearing even if we strike down the expansive definition of client (including those who received services during the last five years) – as the Board believes that evidence supports a finding that the romantic relationship arose before Gwaltney's rendition of professional services ended:

> If the Court rules that the definition of "client" exceeds the bounds of the Board's statutory mandate, the Board will still proceed with an administrative hearing based upon the fact that Ms. Gwaltney's relationship occurred when the client was receiving services, and the parties may be right back before the Court on an "as applied" challenge.

(Appellee brief, p. 17.)[10]

Despite the Board's characterization of "Ms. Gwaltney's relationship occur[ing] when the client was receiving services" as a "fact" and Gwaltney's insistence that the relationship at issue indisputably occurred after her professional relationship with Client ceased, there is clearly a factual dispute on this matter.  We express no opinion on how this factual dispute should ultimately be resolved

---

[10] *See also* Appellee brief, p. 11 (the Board was alleging the relationship began when Client was under Gwaltney's care, so the Board would proceed with administrative hearing even if this Court determined that the Board could not validly define a client to include individuals who had received services within the last five years).

but expect that the administrative fact-finder will approach the question with an open, unbiased mind and make factual findings based solely on the evidence presented. *See* KRS 13B.090(1) ("In an administrative hearing, findings of fact shall be based exclusively on the evidence on the record.").

Depending on the factual findings regarding when the relationship at issue began, resolution of the administrative complaint may not depend on application of the challenged regulatory provisions. And aforementioned precedent expresses a preference against ruling on constitutional challenges unless and until it is necessary. So, we conclude that the trial court did not commit reversible error in declining to reach the constitutional challenge at the present juncture—especially given its authority to decline to issue declaratory judgments in some circumstances pursuant to KRS 418.065. Thus, we affirm.

In sum, we discern no reversible error in the trial court's declining to issue a declaratory judgment on the constitutional challenge for the reasons stated herein. We express no opinion on the merits of the constitutional challenge or the issue of whether the challenged portions of 201 KAR 23:080 exceed the agency's regulatory authority – though we generally recognize the Board's authority to promulgate regulations including one setting forth an ethical code of conduct.[11]

---

[11] However, we express no opinion regarding whether specific provisions in the Ethical Code of Conduct in 201 KAR 23:080 otherwise exceed any constitutional, statutory, or other limitations on the Board's powers.

-24-

Furthermore, any other arguments raised in the briefs which are not discussed herein have been determined to lack merit or relevancy to resolving this appeal.

## **CONCLUSION**

For the reasons stated herein, we **AFFIRM** the trial court's judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sean Ragland
Colleen O. Davis
Louisville, Kentucky

BRIEF FOR APPELLEE:

Nicole S. Bearse
Frankfort, Kentucky