CITY OF TAYLORSVILLE, Appellant,

v.

SPENCER COUNTY FISCAL COURT; David Jenkins; Bill Drury; David Goodlett; David Henry; Hobert Judd; John Riley; Spencer County Clerk; Kentucky League of Cities, Appellees.

No. 2011–CA–001096–MR.

Court of Appeals of Kentucky.

June 1, 2012.

Samuel B. Carl (argued), William F. Stewart, Louisville, KY, for appellant.

Carol Schureck Petitt (argued), Louisville, KY, for appellees.

Laura Milam Ross, Lexington, KY, amicus curiae brief for appellee, The Kentucky League of Cities.

Before COMBS and STUMBO, Judges; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

The City of Taylorsville, Kentucky, appeals from two orders of the Spencer Circuit Court which address the validity of a petition for a voter referendum on a Charter County Government pursuant to KRS 67.830. The trial court found that the Petition met the requirements of the statute and that the signatures supporting it were properly verified. The trial court also rejected the City's challenges to the constitutionality of KRS 67.830. We conclude that the wording of the Petition did not precisely conform to the language of the statute and thus improperly limited the authority of the commission to be created pursuant to the statute. Since the Petition did not strictly comply with the requirements of KRS 67.830, we conclude that it must be rejected without reaching the constitutional issues raised by the City.

This action involves the application and constitutionality of KRS 67.830, which sets out the procedure for a county to adopt a charter county form of government. The statute permits a county to create a commission to study the adoption of charter county government. The process may be initiated through the adoption of an ordinance by the county fiscal court, KRS 67.830(1), or by a petition submitted by a

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

sufficient number of voters. KRS 67.830(2). The process for adoption of a Charter County Government by a petition process is set out in KRS 67.830(2)–(6) as follows:

(2) In lieu of the adoption of an ordinance pursuant to subsection (1) of this section, a petition may be filed with the county clerk requesting a referendum be held on the question of the adoption of a charter county form of government or the consolidation of any agency, subdivision, department, or subdistrict providing any services or performing any functions for a city or county. The petition shall be signed by a number of registered voters equal to at least twenty percent (20%) of the number of county residents voting in the preceding regular election.

(3) Within sixty (60) days of the adoption of an ordinance pursuant to subsection (1) of this section, or within sixty (60) days of a petition being filed with the county clerk pursuant to subsection (2) of this section, the fiscal court and the city legislative body of each city within the county shall jointly appoint a commission to study the question of the adoption of a charter county form of government or the consolidation of any agency, subdivision, department, or subdistrict providing any services or performing any functions for a city or county. The fiscal court shall determine the size of the membership of the commission which shall be composed of not less than twenty (20) or more than forty (40) citizens. The actual appointment of individual members to the commission shall be governed by the following provisions:

(a) The county shall make a number of appointments equal to fifty-five percent (55%) of the membership of the commission.

(b) Each city located within the county shall join together with other cities of the same classification located within the county for the purpose of making appointments to the commission. Jointly the cities shall make a number of appointments equal to forty-five percent (45%) of the membership of the commission. Each class of city within the county shall have a minimum of one (1) representative on the commission.

. . . .

(c) If there is only one (1) city of a particular classification within a county, the city shall make a number of appointments based upon the ratio of the percentage of the population residing within that city to the county-wide population.

(d) The county judge/executive shall serve as a voting member of the commission and preside as its chairman.

(4) The commission shall be funded by the fiscal court and each city within the county in proportion to its ratio of membership on the commission and shall be responsible for developing a comprehensive plan for the consolidation of services and functions of cities and the county, or the formation of a charter county government that shall include but not be limited to the following provisions:

(a) A description of the form, structure, functions, powers, and name of the proposed charter county government;

(b) A description of the officers and their powers and duties of the proposed charter county government; and

(c) The procedures by which the original comprehensive plan may be amended.

(5) The comprehensive plan shall be consistent with the provisions of the Constitution of Kentucky and shall be advertised at least ninety (90) days before a regular election at which the voters will be asked to approve or disapprove the adoption of the comprehensive plan. The question of whether the comprehensive plan shall be adopted shall be filed with the county clerk not later than the second Tuesday in August preceding the day of the next regular election.

(6) The votes shall be counted, returns made and canvassed in accordance with the provisions of KRS Chapters 116 to 121 governing elections, and the results shall be certified by the county board of election commissioners to the county clerk. If a majority of those voting on the issue are in favor of adopting the comprehensive plan, the county board of election commissioners shall enter the fact of record and the charter county commission shall organize the charter county government or the county shall provide for the consolidation of services or functions as provided in the comprehensive plan.

In 2012, the General Assembly amended KRS Chapter 67 to create a new section setting forth standards governing petitions to establish a charter county government. 2012 *Ky. Laws* Ch. 63, § 1. KRS 67.830 was also amended to adopt these standards and to modify the requirements for drafting a charter county referendum and for submitting such petitions to the voters. *Id.* § 4. However, these amendments do not take effect until January 2013. *Id.* § 10. Consequently, our review of the application and constitutionality of KRS 67.830 is limited to version of the statute which was in effect prior to its most-recent amendment.

Thus, we now turn to the underlying facts and procedural history of this particular action—matters not in dispute. In 2007, a group of residents of Spencer County, Kentucky, began to meet informally to discuss the possibility of merging the county and city governments in Spencer County. Taylorsville, a city of the fifth class, KRS 81.010(5), is the only incorporated city within Spencer County. The informal discussions led to the incorporation of the Charter Government Task Force, Inc. (the Task Force), on August 22, 2007. Thereafter, the Task Force organized a campaign to circulate a petition for the creation of a commission pursuant to KRS 67.830(2). The Petition, as drafted by the Task Force, was worded as follows:

We, the undersigned registered voters in Taylorsville and/or Spencer County, hereby petition to let the voters decide on whether [to] have merged City/County Government. In the interest of promoting efficient, economical, and effective local government, we request that the Spencer County Fiscal Court and the Taylorsville City Commission jointly appoint a Merger Commission in accordance with the Charter County Government Statute (KRS 67.830) charged with the following:

1. Study the question of merging Taylorsville and Spencer County Governments; and

2. Draft a plan for Charter County (merged) form of local Government; and

3. Place the merger question on the ballot for a voter decision on or before November 2, 2010.

Members of the Task Force went door-to-door to solicit signatures for the petition. Members also left Petition sheets at various local businesses. In addition, several members set up tables at various local gatherings to provide information about

the Charter County Government and to solicit signatures for the Petition. One of the members of the Task Force printed up approximately 1200–1500 t-shirts which bore a slogan supporting the charter county government vote. The t-shirts were given out free at various events without regard to whether a person signed the Petition. The t-shirts were also given to volunteers who went door-to-door for signatures.

On November 2, 2007, the Task Force filed 137 pages of completed Petition forms in the office of the Spencer County Clerk. The County Clerk, Judy Puckett, began the process of verifying the signatures on the Petition. Puckett testified that there were 5,910 people who voted in the preceding regular election in Spencer County. Since the statute requires that the Petition be signed by at least twenty (20) percent of such voters, Puckett determined that at least 1,182 valid signatures were required.

However, KRS 67.830(2) does not provide any specific guidance for verification of signatures. Consequently, Puckett consulted with a private attorney to determine how to proceed. Based on those consultations, Puckett and the Clerk's Office developed a procedure to verify the signatures. After reviewing the petition, the Clerk's Office certified that there were 1,601 valid signatures on the petition, which is sufficient to trigger the provisions of KRS 67.830. Puckett then submitted the Petition to the Spencer County Judge–Executive and to the Taylorsville Mayor for further action. Upon receipt of the notices from Puckett, a commission was formed as provided under the language of KRS 67.830 and the Petition.

On February 20, 2008, the City brought this action for declaratory relief pursuant to KRS 418.040. The City's petition named as respondents the Spencer County Judge–Executive, the Fiscal Court and its members, the County Clerk, and the Attorney General of Kentucky. The City argued that the wording referendum petition did not comply with KRS 67.830 and that the signatures were not properly validated. The City also challenged the constitutionality of KRS 67.830 on the following grounds: (1) The statute is unconstitutionally vague because it fails to set forth adequate guidelines for the creation of a Charter County Government by means of a referendum petition; (2) The statute violates the Equal Protection Clause of the Kentucky Constitution because it fails to adequately protect the rights of City residents in the referendum process; (3) The statute is constitutionally prohibited as local or special legislation; and (4) The statute operates to deprive the City of its property through unfair and arbitrary procedures, thereby denying it due process of law.

Upon receipt of the petition for declaratory relief, the commission suspended further action on developing a comprehensive plan toward a Charter County Government referendum. The Attorney General appeared and stated his intention not to become involved in the proceedings. Consequently, the trial court dismissed the Attorney General as a party. The remaining respondents filed a response and moved for summary judgment to dismiss the petition for declaratory relief.

The trial court ordered that the proceedings be bifurcated and that the parties first address the non-constitutional issues related to the validity of the Petition and the verification process used by the County Clerk. The parties conducted extensive discovery, including depositions filed of record. The trial court conducted a hearing on the issues on March 24, 2009, and directed that the parties file simultaneous briefs on April 27, 2009.

On July 9, 2009, the trial court issued an opinion and order addressing the validity of the Petition. The court first found that the language of the Petition complied with KRS 67.830. The court also found no evidence of irregularities in the petition process to invalidate the entire Petition. The court next addressed the verification procedures used by the County Clerk, concluding that they were sufficient to uphold the integrity of the Petition. Lastly, the trial court addressed challenges to individual signatures appearing on the Petition which were accepted by the County Clerk. However, the court noted that even if those signatures were discounted, there were 1,570 valid signatures appearing on the Petition. Therefore, the trial court concluded that the Petition complied with KRS 67.830 and contains more than the requisite number of valid signatures required under the statute.

The trial court then directed the parties to brief the constitutional issues raised in the City's petition for declaratory relief. After filing of the briefs, the trial court heard oral arguments from counsel on October 30, 2009. The trial court directed the parties to submit supplemental information relating to the legislative history of the Charter County Government Statute. After some delay, the parties advised the court that no additional legislative history was available.

On April 26, 2011, the trial court issued an opinion and order addressing the constitutional issues raised by the City. First, the court found that KRS 67.830 sets out a coherent procedure for the creation of a Charter County government and thus was not unconstitutionally vague. Second, the court concluded that the statute does not violate the equal protection rights of City residents either by its provisions regarding the composition of the commission or by the requirement that referendum be approved by a majority of all voters in the county. Third, the court determined that the statute did not amount to local or special legislation, in violation of Section 59 of the Kentucky Constitution. Finally, the court found that the City had failed to establish that it would be deprived of any property without due process of law. The City now appeals both orders to this Court.

 It is well-established that the courts will "refrain from [addressing] constitutional issues when other, non-constitutional grounds can be relied upon." *See, e.g., Louisville/Jefferson County Metro Gov't v. TDC Group, LLC*, 283 S.W.3d 657, 660 (Ky.2009) quoting *Baker v. Fletcher*, 204 S.W.3d 589, 597–98 (Ky.2006). Therefore, we must first address the City's challenge to the validity of the petition. The City does not challenge the trial court's factual findings concerning the sufficiency of the County Clerk's verification procedures or that there were a sufficient number of valid signatures appearing on the Petition. Rather, the City argues that the petition was deficiently worded because it did not precisely mirror the statutory language of KRS 67.830.

In particular, the City focuses on the language of KRS 67.830(2) which states that:

> [A] petition [can] be filed with the county clerk requesting a referendum ... on the question of the adoption of a charter county form of government or the consolidation of any agency, subdivision, department, or subdistrict providing any services or performing any functions for a city or county

The City points out that the Petition circulated by the Task Force only mentioned the possibility of merging the City and county governments. The City contends that any commission created pursuant to KRS 67.830 must be able to consider con-

solidation of agencies as well as total merger. Since the Petition did not authorize the commission to consider all alternatives allowed by the statute, the City argues that it was invalid on its face and should have been rejected.

The trial court rejected this interpretation, concluding that the legislature's use of the conjunction "or" in the statute indicates that an ordinance or a petition to create a commission is not required to include both options, but may include either the option for consolidation of governments or for consolidation of agencies or services. When viewed in isolation, the trial court's reading of KRS 67.830(2) is reasonable. However, we conclude that the trial court's conclusion is not consistent with the statute when read in its entirety.

KRS 67.830 does not create a process for directly submitting the merger question to the voters. Rather, once the process is initiated, either by an ordinance or by petition, a commission must then be created "to study the question of the adoption of a charter county form of government or the consolidation of any agency, subdivision, department, or subdistrict providing any services or performing any functions for a city or county." KRS 67.830(3). Based on those studies, the commission must develop a comprehensive plan for merger or consolidation of services, which is then submitted to the voters. KRS 67.830(4).

We agree with the City that the commission must be able to consider all permissible options when developing the plan. Indeed, the General Assembly specifically amended KRS 67.830 to allow for consideration of options other than complete merger of governments. As originally worded, the 1990 version of KRS 67.830(2) provided that "a petition may be filed with the county clerk requesting a referendum be held on the question of merger and the

adoption of a charter county form of government." When the statute was amended in 1994, the General Assembly adopted the current language allowing for a referendum on adoption of a charter county form of government or consolidation of agencies or services.

The language of the Petition makes it plain that merger and *only* merger was sought. The term "merged" or "merger" is used in at least 5 places in the Petition. Any person who signed the Petition would have had no doubt that he or she was petitioning for merged government and nothing else. Although we view the statute as vesting the commission with the power to determine whether there shall referendum on complete merger or merely a referendum on the consolidation of services, the signatories on the Petition did not authorize anything less than merger to be placed on the referendum ballot.

Consequently, we conclude that an ordinance or petition authorizing the creation a Charter County Government commission cannot limit the commission's authority to consider options allowed under KRS 67.830. Rather, the commission must be able to consider all options and draft a comprehensive plan for merger or consolidation of services as it sees fit. Of course, the voters have the ultimate authority whether to accept or reject that plan.

 Based on this conclusion, we must now address whether the County Clerk was required to reject the Petition based upon the deficiencies its wording. In the absence of a specific directive in the statute, a petition will not be invalidated merely because all required elements were not attached when individuals affixed their signatures to it. *Griffin v. City of Robards*, 990 S.W.2d 634, 638 (Ky.1999). However, a petition must strictly comply with the authorizing statute's express requirements. *Bd. of Elections of Taylor*

*County v. Bd. of Educ. of Campbellsville Independent Sch. Dist.,* 635 S.W.2d 324, 328 (Ky.App.1982), citing *Bd. of Educ. of Warren County v. Fiscal Court,* 485 S.W.2d 752 (Ky.1972). When a public vote is sought through a petition process, the petition must be patterned on the requirements of the statute. *Wiggins v. City of Winchester,* 421 S.W.2d 843, 845 (Ky.1967).

Since the Petition did not fully set out the scope of the commission's authority under the statute, we must conclude that it should have been rejected as deficient. Therefore, we conclude that the trial court erred in finding that the wording and form of the petition comply with KRS 67.830. As we are able to resolve this matter based only on the non-constitutional issues, we need not reach the constitutional issues raised by the City.

Accordingly, the declaratory judgment of the Spencer Circuit Court is reversed. Based on the foregoing, we conclude that the petition did not comply with the requirements of KRS 67.830 and was therefore invalid.

ALL CONCUR.