**BERGER FAMILY REAL ESTATE, LLC, Appellant**

v.

**CITY OF COVINGTON; Covington Business Council, Inc.; and Urban Partnership of Covington, Appellees**

NO. 2013–CA–001482–MR

Court of Appeals of Kentucky.

RENDERED: MAY 29, 2015; 10:00 A.M.

⚷6

Brief for Appellant: Dana R. Howard, Lexington, Kentucky, Timothy J. Eifler, Louisville, Kentucky, Brandon N. Voelker, Cold Spring, Kentucky, Scott R. Thomas, Ft. Mitchell, Kentucky

Brief for Appellee City of Covington: Bryce C. Rhoades, Frank E. Warnock, Covington, Kentucky

Brief for Appellees Covington Business Council, Inc. and Urban Partnership of Covington: David V. Kramer, Ryan M. McLane, Crestview Hills, Kentucky

BEFORE: COMBS, STUMBO AND THOMPSON, JUDGES.

*OPINION*

THOMPSON, JUDGE:

Berger Family Real Estate, LLC (Berger) is a commercial property owner in a business district within the City of Covington. This action was filed after a petition was circulated to designate the area as a management district, also referred to as a business improvement district.

Berger appeals from an order of the Kenton Circuit Court dismissing its claims for declaratory and injunctive relief against the City of Covington, and two Kentucky non-profit corporations, Covington Business Council, Inc. and Urban Partnership of Covington (collectively the City). We agree with the Kenton Circuit Court that there is not a justiciable case or controversy and affirm.

The petition challenged was circulated pursuant to KRS 91A.555, which provides authority to a city such as Covington to establish a management district for the purpose of providing and financing economic improvements to benefit property within the proposed district. The procedure to initiate and establish the district is provided for in KRS 91A.560:

(1) A city may initiate proceedings to establish a management district upon receipt by the mayor of a written petition requesting the formation of a management district. A petition requesting the formation of a management district shall contain:

(a) The signatures and addresses of a number of real property owners, who together are the owners of fifty-one percent (51%) or more of the properties within the proposed district and who are the owners of real property equal to at least fifty-one percent (51%) of the assessed value of property within the proposed management district;

(b) An accurate description of the boundaries of the proposed management district;

(c) An economic improvement plan that shall provide:

1. A description of the economic improvements to be provided within the district;

2. A preliminary estimate of the annual costs of the proposed economic improvements; and

3. The proposed method of assessing the costs of the economic improvements against the properties;

(d) The proposed makeup of the board of the management district, its powers and duties; and

(e) The number of years in which the assessments are proposed to be levied, not to exceed five (5) years.

(2) When a petition satisfying the requirements of subsection (1) of this section is received by the mayor, he shall forward it to the legislative body which may proceed to enact an ordinance establishing a management district as provided in KRS 91A.565.

KRS 91A.565(2) provides: "After the first reading of the ordinance to establish the management district, but prior to its second reading and passage, a public hearing on the question of the establishment of the management district shall be held by the legislative body." KRS 91A.565(4) provides: "After the public hearing, the legislative body may give second reading to the ordinance that shall become effective if passed and approved pursuant to KRS 83A.060."

The City of Covington is a second-class city that operates under a city manager form of government and governed by a board of commissioners consisting of the mayor and four commissioners. The Covington Business Improvement District Steering Committee consists of the City of Covington, the Covington Business Council, Inc. and the Urban Partnership of Covington.

After its formation, the Steering Committee circulated a petition addressed to property owners in the City of Covington's central business district to establish a management district to reverse the decline of the area. Prior to the petition being presented to the mayor for approval, this action was filed by Scott Street Land Company, LLLP,[1] pursuant to KRS

---

1. Scott Street Land Company, LLLP, owned property within the proposed district when this action was filed but subsequently sold that property. Therefore, it was dismissed as a party to this appeal due to lack of standing.

418.040 and KRS 418.045 seeking: (1) a declaration that the petition is statutorily invalid and that any ordinance emanating from that petition is likewise invalid; (2) an injunction preventing the City from expending public funds to circulate the petition and/or the City from considering the submission of the petition; and (3) a declaration that property owners have the right to sign, not sign and/or withdraw their names from the petition. Berger intervened seeking the same relief.

The City moved to dismiss the complaint arguing numerous grounds, including the lack of a justiciable case or controversy. The circuit court agreed with the City that there was no current controversy subject to judicial review and dismissed the complaint. This appeal followed.

 We first address an appellate procedural issue presented by the City. It maintains this Court is precluded from reviewing the circuit court's ruling that there was no current controversy subject to judicial review because it was not specified as an issue presented on appeal in Berger's prehearing statement. It points out this Court previously denied Berger's motion to amend its prehearing statement.

· Kentucky Rule of Civil Procedure (CR) 76.03(8) provides: "A party shall be limited on appeal to issues in the prehearing statement except that when good cause is shown the appellate court may permit additional issues to be submitted upon timely motion." Despite the use of "shall," in *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 197 (Ky.1994), the Court stressed "failure to observe strict compliance with CR 76.03 is not jurisdictional." It emphasized that the purpose of the rule is not to preserve issues for review on the merits but is "part of the prehearing conference rule (CR 76.03), which is an informal procedure added to the appellate process in an effort to settle cases, or

otherwise dispose of them, without the need of a full-blown appeal." *Id.* at 196–97. Therefore, "the · question is one of substantial compliance with appropriate sanctions primarily dependent upon whether and what prejudice resulted to the opposing party[.]" *Id.* at 197. In the spirit of substantial compliance, · our Supreme Court cautioned against "a hypertechnical reading of the· statement of issues requirement[.]" *Id.*

The basis for the circuit court's dismissal of Berger's action was that there was not a justiciable case or controversy but, unexplainably, Berger's prehearing statement does not specifically set forth this threshold issue. Nevertheless,· we cannot reconcile the purpose of the rule with penalizing Berger for its omission. The issue in this case is straightforward and "the parties are and have been well aware of" the primary issue presented on appeal. *Jones v. Dougherty*, 412 S.W.3d· 188, 192 (Ky.App.2012). We conclude there can be no prejudice to the City from our review of the threshold issue presented and, therefore, proceed to· address whether the circuit court properly dismissed, Berger's action.

The Declaratory Judgment Act, KRS 418.040, provides:

In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration ·of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

KRS 418.045 permits a person "whose rights are affected by statute, municipal ordinance, or other government regulation . . . provided always that an actual contro-

versy exists" to petition for a declaration of rights.

The actual controversy requirement is constitutional in origin. Section 112(5) of the Kentucky Constitution grants the circuit court jurisdiction over only "justiciable causes." Although evading precise definition, the question of justiciability focuses on "whether there is a live controversy for the court to decide." *Interactive Gaming Council v. Commonwealth ex rel. Brown*, 425 S.W.3d 107, 112 (Ky.App.2014).

An essential element of any justiciable claim is ripeness. *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 270 (Ky. App.2005). Ripeness is a threshold issue: "Because an unripe claim is not justiciable, the circuit court has no subject matter jurisdiction over it." *Id.* (citations omitted).

"The basic rationale of the ripeness requirement is 'to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]'" *W.B. v. Commonwealth, Cabinet for Health and Family Services*, 388 S.W.3d 108, 114 (Ky.2012) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). A court is precluded from deciding "[q]uestions which may never arise or which are merely advisory, academic, hypothetical, incidental or remote, or which will not be decisive of a present controversy[.]" *Interactive Gaming Council*, 425 S.W.3d at 112 (quoting *Hughes v. Welch*, 664 S.W.2d 205, 208 (Ky.App.1984)).

Additionally, KRS 418.065 of the Declaratory Judgment Act "anticipates that there will be occasions when it will not be best to address the controversy at the time of the petition, and so authorizes the courts to defer consideration until the circumstances are more favorable for a resolution of the issue presented[.]" *W.B.*, 388 S.W.3d at 112. The statute states: "The Court may refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or construction is not necessary or proper at the time under all the circumstances." KRS 418.065. As a practical matter, "courts would rather avoid speculative cases, defer to finders of fact with greater subject matter expertise, decide cases with fully-developed records, and avoid overly broad opinions, even if these courts might constitutionally hear a dispute." *W.B.*, 388 S.W.3d at 114–15 (quoting *Matherne v. Gray Ins. Co.*, 661 So.2d 432, 435–36 (La. 1995)).

Ripeness applies with equal force when the judiciary is requested to pass on the question of a local government's legislative authority and "prevents courts from interfering ... until it is necessary to do so[.]" *Id.* at 114.

A court has no constitutional authority to sit in judgment on proposed legislation when the legislative body is proceeding within the scope of its governmental or corporate power. That obviously properly recognizes the prerogative of the independent branch of government. Ordinarily, no justiciable question may arise until after the enactment or passage of an ordinance or resolution. Then, the legislation having been accomplished, under traditional constitutional law, it may be put to the test of legal validity and the question may be raised whether it would be for a private service or benefit to such degree that the court should determine the action was arbitrary. Its restraining power may then be directed against its enforcement.

*Avey Drilling Mach. Co. v. Lukowsky*, 261 S.W.2d 432, 433–34 (Ky.1953). We conclude the issues before us are not ripe for judicial determination.

KRS 91A.560 sets forth the procedure for establishment of a management district for the purpose of reversing the deterioration of many downtown areas. After the district is established, the assessments against the business as within the district will benefit those same businesses by improvements to the area. Because any assessments will be imposed against the businesses within the district, the statute first requires the consensus of at least 51% of the business property owners affected by the proposed district. The petition must then be submitted to the mayor for review, who after determining the petition satisfies the statutory requirements, submits it to the city's legislative body, which may or may not begin the process of enacting an appropriate ordinance.

■■■ When this action was filed, the petition was circulated but the requisite signatures had not been obtained. There was only speculation the requisite signatures would be garnered, the mayor would approve the petition and forward it to the commission for a vote, an ordinance would be proposed, and after the required public hearing, would be passed. As we write, the petition is a mere step in the process which may, or may not, produce an ordinance.

Despite that the only step toward the establishment of a management district is the circulation of a petition and that KRS 91A.555 expressly authorizes the City to establish a management district, Berger contends that the expenditure of approximately $45,000 by the City renders this case ripe for review. In support of its argument, it relies on cases which are readily distinguishable.

In *Utz v. City of Newport*, 252 S.W.2d 434 (Ky.1952), citizens presented the Newport Board of Commissioners with a petition to enact an ordinance. The applicable statute provided that if the Board of Commissioners rejected the ordinance, it was required to submit the ordinance for a referendum. After the Board refused, a citizen filed a mandamus action to compel submission of the ordinance. The Court considered and rejected a contention that the issue was not ripe for review.

Cautioning that it is constitutionally prohibited from rendering advisory opinions, the Court recognized there is a "diversity of opinion whether courts should interfere where the question is such as requires adjudication upon the constitutionality or validity of an *initiative or referendum measure* before its enactment or submission." *Id.* at 436 (emphasis added). Ultimately, the Court concluded it could consider the validity of a proposed ordinance. It reasoned:

There is no right to obtain a vote of the people upon the enactment of legislation that would be invalid if approved by them. The court ought not to compel the doing of a vain thing and the useless spending of public money. Therefore, the writ of mandamus will be denied where the ordinance is unlawful or does not fall within the measures that may be referred.

*Id.* at 437.

Here, the immediacy of costly public expenditures is not present and there is simply nothing for this Court to compel. Although the City has expended approximately $45,000 obtained though grants or otherwise, that expenditure is not equivalent to enjoining an expensive election. Most importantly, the City's decision to pass or decline to pass an ordinance is not one that can be compelled by this Court. Again, *Avey Drilling* is instructive where

the legislative body has discretion to either act or decline to act. Judicial intervention is only "warranted if the action is purely ministerial or will squander or divert a fund or property held in trust[.]" *Avey Drilling Mach. Co.*, 261 S.W.2d at 434.

The City of Covington has merely entertained the possibility of supporting the formation of a management district, an act which it clearly has the authority to perform. While the legislative enactment of a management district must be preceded by a proper petition and in accordance with the statutory provisions, the preliminary planning is within the City of Covington's statutory authority to perform any function "in furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute." KRS 82.082. Absent the passage of an ordinance, there is simply "no grist for the judicial mill." *Veith v. City of Louisville*, 355 S.W.2d 295, 298 (Ky.1962).

For the same reasons, the remaining cases cited and relied upon by Berger are distinguishable. *See City of Taylorsville v. Spencer County Fiscal Court*, 371 S.W.3d 790 (Ky.App.2012) (addressing the validity of a petition for a voter referendum on a charter county government); *Goodloe v. Baesler*, 539 S.W.2d 298 (Ky. 1976) (action filed challenging validity of a petition proposing an amendment to the Lexington–Fayette Urban County Government charter be placed on the election ballot); *Bd. of Ed. of Warren County v. Fiscal Court of Warren County*, 485 S.W.2d 752 (Ky.1972) (addressing the sufficiency of a voters' petition presented to the Warren County Fiscal Court seeking a referendum on levying a utility gross receipts tax); *Stewart v. Burks*, 384 S.W.2d 316 (Ky.1964) (action filed by electors to enjoin the Hart County Clerk from placing a nominee's name on the official school ballot for the election); *Beierle v. City of*

*Newport*, 305 Ky. 477, 204 S.W.2d 806 (1947) (action to compel the mayor and commissioners to adopt a certain proposed city ordinance or cause its submission to popular vote); *Ginsburg v. Giles*, 254 Ky. 720, 72 S.W.2d 438 (1934) (action challenging the constitutional validity of an ordinance directing the holding of an election).

Berger also requested that the trial court declare that it and other unspecified property owners have the right to withdraw their signatures from the petition. As to Berger, this issue is moot because the City allowed Berger to remove its name from the petition after this litigation was filed. However, Berger contends that even though there is no longer a justiciable controversy regarding its request to withdraw its signature, other property owners may seek the same relief and, therefore, the issue is capable of repetition, yet evading review.

" 'Capable of repetition, yet evading review' is a well-recognized exception to the mootness doctrine, although one to be used sparingly." *Riley v. Gibson*, 338 S.W.3d 230, 233 (Ky.2011). The exception has two elements: "whether (1) the 'challenged action is too short in duration to be fully litigated prior to its cessation or expiration and (2) there is a reasonable expectation that the same complaining party would be subject to the same action again.' " *Philpot v. Patton*, 837 S.W.2d 491, 493 (Ky.1992) (quoting *In re Commerce Oil Co.*, 847 F.2d 291, 293 (6th Cir. 1988)).

The contention that the signatures on the petition are not valid, for whatever reason, is an argument relating to the validity of an ordinance enacted pursuant to that petition. As we have said, at this point the ordinance is only hypothetical and, if passed, will be subject to judicial review. Not only is this issue prematurely presented, but because the City has per-

mitted Berger to withdraw its signature from the petition, Berger will not be "subject to the same action again." *Id.*

 Although the capable of repetition, yet evading review exception to the mootness doctrine has traditionally been the lone exception, another more recently confirmed exception has evolved. In *Morgan v. Getter,* 441 S.W.3d 94 (Ky.2014), our Supreme Court recognized that issues of substantial public importance have justified carving out a second exception. However, the exception is limited in parameter:

The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question.

*Id.* at 102 (quoting *In re Alfred H.H.,* 233 Ill.2d 345, 331 Ill.Dec. 1, 910 N.E.2d 74, 80 (2009)). All three elements must be "clearly shown." *Id.* "[T]he party asserting justiciability must show, in addition to the public-question and likelihood-of-recurrence elements, that there is a need for an authoritative determination for the future guidance of public officers." *Id.* at 102–03 (internal quotations omitted).

 We are not persuaded that Berger has clearly established the public interest exception to the mootness doctrine. Simply stated, it stretches this Court's practical reasoning to believe that a substantial number of potential signees of the petition will sign and then seek to rescind their signature so that this same issue will arise in many other cases. Additionally, unlike in *Morgan,* where there was no danger with respect to "the separation of powers from advisory opinions[,]" *id.* at 103, if we were to decide whether the City can deny withdrawal of a signature on the petition,

we would step into the prohibited role of rendering an advisory opinion.

We agree with the Kenton Circuit Court that at this time, the issues presented by Berger do not present a justiciable controversy. The order of the Kenton Circuit Court is affirmed.

STUMBO, JUDGE, CONCURS.

COMBS, JUDGE, CONCURS IN RESULT AND FILES SEPARATE OPINION.

COMBS, JUDGE, CONCURRING:

I write separately solely to address the nature of the prehearing statement as discussed in the majority opinion. In the case upon which it relies, *Capital Holding Corp. v. Bailey,* 873 S.W.2d 187, 197 (Ky. 1994), the Supreme Court held that "failure to observe strict compliance with CR 76.03 is not jurisdictional." However, that statement bolstering substantial compliance has been brought into question by a subsequent case, *Sallee v. Sallee,* 142 S.W.3d 697 (Ky.App.2004). In *Sallee,* this Court declined to review an issue that had not been raised either in the prehearing statement or by timely motion seeking permission to raise it late—clearly implying that the rule had jurisdictional implications.

I raise this point simply to note that *Sallee* essentially treated the failure to recite an issue in the prehearing statement as a jurisdictional bar to its consideration on appeal. The conflict between *Capital Holding* and *Sallee,* of course, would require deference to the Supreme Court decision in *Capital Holding.* However, the very existence of inconsistency as to the jurisdictional impact of CR 76.03(8) is a matter of concern for the practicing Bar to

alert it to proceed with caution on this
issue.