RENDERED: NOVEMBER 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1341-MR

BILLY C. JUSTICE; CAROLYN CONLEY;
DAVID POWELL; ROBERT JAMES;
SCOTT MALLORY; JAMES SHROPSHIRE;
DALLAM HARPER; AND FAYETTE
ALLIANCE, INC.                                                          APPELLANTS


APPEAL FROM FAYETTE CIRCUIT COURT
v.                        HONORABLE LUCY VANMETER, JUDGE
ACTION NO. 23-CI-02251


LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT COUNCIL;
COUNCIL MEMBERS: DAN WU;
JAMES BROWN; CHUCK ELLINGER, II;
TANYA FOGLE; SHAYLA LYNCH, J.D.;
HANNAH LEGRIS; BRENDA MONARREZ;
LIZ SHEEHAN; DENISE GRAY;
PRESTON WORLEY; FRED BROWN;
WHITNEY ELLIOTT BAXTER;
DAVE SEVIGNY; JENNIFER
REYNOLDS; AND KATHY PLOMIN                                              APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE:  The above-captioned appellants filed an action in Fayette Circuit Court objecting to the manner in which the Lexington-Fayette Urban County Government Council and its individual members (collectively, the "Council") proposed to expand the LFUCG Urban Service Area.  The circuit court ultimately dismissed the appellants' suit after concluding the Council's proposed expansion of the Urban Service Area was merely a step in a continuing and unfinished zoning process, not an action susceptible to a legal challenge from the appellants.  This appeal followed.  Upon review, we affirm.

## I. BACKGROUND

The controversy presented in this matter largely involves the "goals and objectives" that are required to be a part of comprehensive zoning plans in Kentucky pursuant to KRS[1] 100.187(1); and whether the Council's adoption of "goals and objectives" for that purpose – which amended the "goals and objectives" originally recommended by the LFUCG Planning Commission ("Planning Commission") – created some form of justiciable controversy.  In its

_____

[1] Kentucky Revised Statute.

"Final Planning Commission Recommendation" dated "2.22.23,"[2] the Planning Commission proposed a set of comprehensive zoning plan goals and objectives that included "Maintain[ing] the current boundaries of the Urban Service Area[.]" *See* Imagine Lexington 2045 Goals and Objectives, Theme E, Goal 3. But, on June 15, 2023, the Council rejected the Planning Commission's recommendation and instead adopted the following:

> Through a robust public engagement process, the Urban County Council has identified a critical need for additional acreage inside the Urban Service Area for housing and job creation. The 2045 Comprehensive Plan shall maintain the Urban Service Area concept, but it is also this Plan's responsibility to meet existing needs and plan for future growth to meet the needs of our community through 2025.
>
> Objectives:
>
> a) **The Planning Commission, in carrying out the land use element of this Comprehensive Plan, shall identify no less than 2,700 acres but no more than 5,000 acres for inclusion within the Urban Service Area**. . . .

*See* Revised Imagine Lexington 2045 Goals and Objectives, Theme E, Goal 3 (emphasis added).

The appellants are a group of citizens and a special interest group who, roughly a month later, filed an action in Fayette Circuit Court objecting to the

---

[2] "2.22.23" is perhaps a misnomer, as precisely when the Council received the Planning Commission's recommendation is a point of dispute.

Council's goals and objectives. Their complaint sought an injunction[3] and included actions for: (1) declaratory relief; (2) an "appeal" under the auspices of KRS 100.347; (3) a "due process violation;" and (4) a "violation of Section 2 of the Kentucky Constitution." The appellees subsequently moved to dismiss the appellants' complaint on standing and ripeness grounds, the circuit court ultimately granted their motion, and this appeal followed. Parenthetically, it is undisputed that when the appellants filed their suit – and when the circuit court ultimately dismissed their suit – the Urban Service Area had not been expanded; Lexington's zoning map had not been amended; and the Planning Commission was still merely in the process of considering the Council's amended statement of goals and objectives.

---

[3] Based on the strength of their claims, the appellants sought injunctive relief restraining the Council from adopting or enforcing its goals and objectives and from requiring the Planning Commission to increase the Urban Service Area. The circuit court denied their request because, as set forth herein, the appellants lacked standing to assert any of their claims, and their claims were otherwise unripe. The appellants then moved this Court for intermediate injunctive relief; their motion was denied; and they now reiterate their request for injunctive relief, assuming we reverse. Because we are affirming the circuit court, it is unnecessary to address this point further.

## II. STANDARD OF REVIEW[4]

The appellants' suit was dismissed because the circuit court granted a motion the appellees filed pursuant to CR 12.02(a) ("lack of jurisdiction over the subject matter") and (f) ("failure to state a claim upon which relief can be granted"). With that in mind,

> The court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim. In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?

*James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002) (internal quotation marks and footnotes omitted). We review dismissals under CR 12.02 *de novo*,

---

[4] While not raised as a point of contention by any party, we note that in its analysis of both the applicable law and the origin and nature of the Urban Service Area, the circuit court considered – without objection – a variety of public records that were not included as exhibits in the appellants' complaint, such as Lexington's zoning ordinances and various comprehensive plan documents. Ordinarily, if matters outside the pleadings are presented to and not excluded by the court in its consideration of a Kentucky Rules of Civil Procedure ("CR") 12 motion, the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56." *See* CR 12.02. However, courts are, as here, permitted to take judicial notice of public records and may do so without converting a motion to dismiss into one for summary judgment. *Rogers v. Commonwealth*, 366 S.W.3d 446, 451 (Ky. 2012) ("[C]ourt records . . . may now be resorted to for judicial notice[.]"); *see, e.g., Polley v. Allen*, 132 S.W.3d 223, 226 (Ky. App. 2004) ("A court may properly take judicial notice of public records and government documents, including public records and government documents available from reliable sources on the internet."); *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").

accepting the plaintiff's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Gall v. Scroggy*, 725 S.W.2d 867, 868-69 (Ky. App. 1987); *Pike v. George*, 434 S.W.2d 626, 627 (Ky. 1968) ("For the purpose of testing the sufficiency of the complaint the pleading must not be construed against the pleader and the allegations must be accepted as true.").

### III. ANALYSIS

As indicated, the circuit court dismissed the appellants' claims upon determining that any expansion of the Urban Service Area, in and of itself, did not cognizably injure the appellants or otherwise qualify as an action susceptible to legal challenge. Before delving into the appellants' various contentions of error regarding those overarching determinations, we will begin our analysis with a discussion of what the Urban Service Area is. In a nutshell, the "Urban Service Area" is a concept and tool that Lexington created and grandfathered into its process for reviewing, amending, or readopting its comprehensive zoning plan for the development of public and private property within its boundaries – a process otherwise governed by ordinance and KRS Chapter 100. As aptly explained by the circuit court in its underlying order,

> The authority of the Council and the planning commission to regulate property and zoning matters derives from the grant of statutory authority found in KRS Chapter 100. *See Oldham Cnty. Plan. & Zoning Comm'n v. Courier Commc'ns Corp.*, 722 S.W.2d 904, 907 (Ky. App. 1987) ("Local zoning authorities . . . have

-6-

only those powers expressly provided by statute. They are not invested with a constitutional nor a common law right to regulate property through the passage of local zoning ordinances. Such ordinances are the result of police power vested in the state legislature which in turn may invest in the legislative branch of municipal government a specified portion of that power."). "[A]ny authorized political subdivision that wants to adopt zoning regulations and subdivision regulations must comply with Chapter 100." *Sebastian-Voor Props., LLC v. Lexington-Fayette Urb. Cnty. Gov't*, 265 S.W.3d 190, 193 (Ky. 2008). The Lexington-Fayette Urban County Government[5] ("LFUCG") elected to engage in planning operations by appointing a planning commission. *See* Zoning Ordinance Sec. 1-8.[6] The governing statutes require the planning commission to "prepare a comprehensive plan, which shall serve as a guide for public and private actions and decisions to assure the development of public and private property in the most appropriate relationships." KRS 100.183. The comprehensive plan must contain several elements, including a land use element "which shall show proposals" for how the community should use public and private lands:

> The comprehensive plan shall contain, as a minimum, the following elements:
>
> (1) A statement of goals and objectives, which shall serve as a guide for the physical development and economic and social well-being of the planning unit;

---

[5] The LFUCG is a "planning unit" as that term is defined in KRS 100.111(15).

[6] Zoning Ordinance Sec. 1-8 states, in part: "The Lexington-Fayette Urban County Planning Commission, created by Resolution Nos. 1793 and 1797 of the City of Lexington and by Resolution of the Fiscal Court of Fayette County, and referred to prior to 1973 as the City-County Planning Commission, shall continue as the Planning Commission for Lexington-Fayette Urban County."

(2) A land use plan element, which shall show proposals for the most appropriate, economic, desirable, and feasible patterns for the general location, character, extent, and interrelationship of the manner in which the community should use its public and private land at specified times as far into the future as is reasonable to foresee. Such land uses may cover, without being limited to, public and private, residential, commercial, industrial, agricultural, and recreational land uses;

(3) A transportation plan element, . . . ;

(4) A community facilities plan element . . . ;

(5) (a) Provisions for the accommodation of all military installations greater than or equal in area to three hundred (300) acres . . . ;

(6) The comprehensive plan may include any additional elements such as, without being limited to, community renewal, housing, flood control, pollution, conservation, natural resources, regional impact, historic preservation, and other programs which in the judgment of the planning commission will further serve the purposes of the comprehensive plan.

KRS 100.187. Upon initial adoption of the comprehensive plan by the planning commission, "[a]ll elements of the comprehensive plan shall be based upon but not limited to . . . research, analysis, and projections" as specified in KRS 100.191. This should include an analysis of past, present and forecasted future population, an economic survey of major public and private business activities, and research regarding the needs of the

community.  *Id*.  The planning commission is directed to review the comprehensive plan elements "from time to time" but "[a]t least once every five (5) years."  KRS 100.197(1).  Upon subsequent review, amendment or adoption, "it shall not be necessary to conduct a comprehensive review of the research done at the time of the original adoption pursuant to KRS 100.191, when the commission finds that the original research is still valid."  *Id*.

This case concerns the review, amendment and/or readoption of Lexington's comprehensive plan.  The starting point for the planning commission is the preparation and adoption of a statement of goals and objectives "to act as a guide for the preparation of the remaining elements and the aids to implementing the plans."  KRS 100.193(1).  The statement of goals and objectives adopted by the planning commission "shall be presented for consideration, amendment, and adoption by each legislative body . . . in the planning unit."  KRS 100.193(1).  Each legislative body within the planning unit is also separately authorized to develop its own goals and objectives which, in turn, the planning commission "shall consider when preparing or amending the comprehensive plan."  KRS 100.193(2).  The statute states, in pertinent part:

> (1) **The planning commission of each planning unit shall prepare and adopt the statement of goals and objectives to act as a guide for the preparation of the remaining elements and the aids to implementing the plans**.  **The statement shall be presented for consideration, amendment, and adoption by each legislative body** and fiscal court in the planning unit.  The legislative bodies and fiscal courts shall take action upon the proposed statement of goals and objectives within ninety (90) days of the date upon

which the legislative body or fiscal court receives the planning commission's final action upon such proposal. If no action is taken within the ninety (90) day period, the statement of goals and objectives shall be deemed to have been approved by operation of law.

(2) **Each legislative body and fiscal court in the planning unit may develop goals and objectives for the area within its jurisdiction which the planning commission shall consider when preparing or amending the comprehensive plan**. During its preparation and that of the other plan elements, it shall be the duty of the planning commission to consult with public officials and agencies, boards of health, school boards, public and private utility companies, civic, educational, professional, and other organizations, and with citizens.

KRS 100.193 (emphasis added). Finally, "[a]ll elements of the comprehensive plan shall be prepared with a view towards carrying out the statement of goals and objectives." KRS 100.197. The plain language of KRS Chapter 100 grants the Council ultimate discretion in formulating the statement of goals and objectives while the planning commission is tasked with preparation of the remaining elements of the comprehensive plan.

The governing statutes separately empower the Council to enact zoning ordinances to regulate the use of property including the activity that may occur on the property, the size and type of structures that may be built, and the intensity of use. *See* KRS 100.203. KRS 100.201 grants "the legislative bodies and fiscal courts within the planning unit" the authority to "enact permanent land use regulations, including zoning and

-10-

other kinds of growth management regulations" to, among other things, "promote public health, safety, morals, and general welfare of the planning unit." KRS 100.201. *See also* KRS 100.203 (providing that zoning regulations may include text provisions and a Zoning Map) and KRS 100.211 (relating to amendment of text provisions and/or the Zoning Map). Lexington has adopted a local Zoning Ordinance to, among other things, "implement the adopted Comprehensive Plan" and "facilitate orderly and harmonious development in the visual and historic character of Lexington-Fayette Urban County." *See* Zoning Ordinance Sec. 1-3. The Zoning Map is created by the Zoning Ordinance and is entirely separate from the Urban Service Boundary:

> The Lexington-Fayette Urban County is hereby divided into zones as provided herein and as shown on the Zoning Map, which is hereby declared to be a part of this Zoning Ordinance. **The Zoning Map shall be the official record of zoning status of all land in the Urban County and shall be kept in spatial databases that are maintained as part of the Urban County's geographical information system (GIS).** This depiction of the zoning boundaries, along with additional reference data in the GIS, shall constitute the Official Zoning Map for the Urban County. The Zoning Map shall be kept up to date to reflect the adopted September 1969 mapping data and all of its amendments by the Lexington-Fayette Urban County Government. The Zoning Map may be viewed by the general public at the Division of Planning office. The Division of Planning may certify a paper copy of a portion of the Zoning Map as true and accurate.

Zoning Ordinance Sec. 2-1 (emphasis added).

-11-

Amendment of the Zoning Map occurs by an act of the Council, not by the planning commission's adoption of a comprehensive plan which includes an expanded Urban Service Area. *See id.* at Sec. 6-6. The Zoning Ordinance further sets out the process for development of property. *See id.* at Article 21 – Development Plans [Sec. 21-1] ("This Article outlines the content and procedure for submission, review, and approval, of all development plans required by the Zoning Ordinance and Subdivision Regulations unless another procedure or different contents are specified elsewhere in this Zoning Ordinance.").

The concept of Lexington's Urban Service Area predates the adoption of KRS Chapter 100 and, while historically part of the comprehensive plan, is distinct from statutory zoning provisions, the local Zoning Ordinance text and the Zoning Map. The 2018 Comprehensive Plan notes "the first urban service boundary in the nation was established in this city in 1958." *See* Imagine Lexington 2018 Comprehensive Plan at ix. It includes a collection of maps which illustrate how the Urban Service Area has expanded or contracted over the years. That comprehensive plan further describes the purpose of the Urban Service Area to "accommodate urban growth in areas where the basic services such as sewer, police, fire, school, street lighting, garbage collection, library, transit and public utilities can be effectively and economically provided to the taxpayer" and additionally explains that the "Urban Service Area concept is a one-dimensional approach. That is, it relates only to the locational or geographic aspect of urban growth . . . . The type and intensity of growth are addressed by the more traditional zoning and subdivision tools." See 1980 Comprehensive Plan, attached as Exhibit 2 to Amicus Memorandum[7] at 70, 68.

---

[7] As this citation somewhat illustrates, the circuit court accepted an amicus brief from nonparties (*i.e.*, Commerce Lexington, Inc.; Home Builders Association of Lexington, Inc.; Lexington-

While the comprehensive plan (which includes the Urban Service Area) and Lexington's Zoning Ordinance text and the Zoning Map are separate concepts, each informs aspects of development in Lexington. For example, any amendment to the Zoning Map must be consistent with the comprehensive plan or otherwise meet certain statutory requirements:

> (1) Before any map amendment is granted, the planning commission or the legislative body or fiscal court must find that the map amendment is in agreement with the adopted comprehensive plan, or, in the absence of such a finding, that one (1) or more of the following apply and such finding shall be recorded in the minutes and records of the

Bluegrass Association of Realtors, Inc.; Lexington for Everyone, Inc.; and The Urban League of Lexington, Fayette County, Inc.). It also accepted the amicus brief over the objection of the appellants, who claimed – and continue to claim on appeal – that the circuit court was prohibited from doing so, and accordingly erred, because no specific court rule authorizes trial-level amicus briefs.

That said, the appellants' argument in this vein does not merit reversal. Specifically, the appellants fail to explain how the circuit court's acceptance of the amicus brief qualified as something more than harmless error because, as they acknowledge in their brief, the amicus "merely repeated the [Council's] arguments that the [appellants'] action was premature and that the [appellants'] arguments based on KRS Chapter 100 were incorrect." Moreover, the lack of any specific rule addressing trial-level amicus briefs does not support that such briefs are unauthorized. To the contrary, "[c]ourts have inherent authority to appoint an amicus even in the absence of a rule or statute." 4 AM. JUR. 2d *Amicus Curiae* § 3 (citation omitted). Indeed, Kentucky jurisprudence illustrates that very point. *See, e.g.*, *Wilson v. Kentucky Transp. Cabinet*, 884 S.W.2d 641, 643 (Ky. 1994) ("At the trial level, the special amicus brief favored dismissal of the suit because the Supreme Court had refused to issue a temporary injunction which would have prohibited the sale of the bonds in 1990."); *Thompson v. Fayette County*, 302 S.W.2d 550, 552 (Ky. 1957) ("It is finally urged the trial court improperly permitted Mr. Thurman's attorney, F. Selby Hurst, to participate in the trial of this action as amicus curiae. This is a matter that lies within the discretion of the court. It is commendable practice in the interests of justice for a court to utilize all available assistance by its own legal officers. The practice has been approved in other jurisdictions." (citations omitted)); *see also Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 426 (E.D. Ky. 2015) ("While no rule governs the issue at the district court level, it is generally accepted as being within the district court's discretion to permit the filing of an amicus brief." (citation omitted)).

planning commission or the legislative body or fiscal court:

> (a) That the existing zoning classification given to the property is inappropriate and that the proposed zoning classification is appropriate;

> (b) That there have been major changes of an economic, physical, or social nature within the area involved which were not anticipated in the adopted comprehensive plan and which have substantially altered the basic character of such area.

KRS 100.213. Put another way, the Urban Service Area is a planning tool within the comprehensive plan, but it is not determinative of the zoning designation given to a specific property. Property may only be rezoned by the process detailed in KRS Chapter 100 and Article 6 of the Zoning Ordinance. For example, in *Hougham v. Lexington-Fayette Urb. Cnty. Gov't*, 29 S.W.3d 370, 372-73 (Ky. App. 1999), the court stated:

> [J]ust because the zone change request complies with the comprehensive plan or meets the criteria set forth in KRS 100.213(1)(a) or (b), does not mean the zone request *must* be granted. The fiscal court still has discretion in reviewing and determining each zone change application. The governing body is given authority to decide each application on its own merits and its impact on the community. There is no specific, magic formula which is applied to the determination of each zone change request. The administrative body must

-14-

> comply with all statutory requirements set forth in KRS Chapter 100 as to notice, hearing, findings of fact, etc. If it has followed all the statutory requirements, it can make its decision to grant or deny the zone change request. Making these decisions is the function of appointed and/or elected officials. Their responsibilities include looking at the "big picture" and making the "tough decisions."

*Id*.

With the above in mind, we now turn to the claims that the appellants presented below, and whether those claims were correctly dismissed.

## 1. Declaratory relief

The appellants' request for declaratory relief was multifaceted and, as discussed later, was somewhat repeated in their other claims. In sum, the appellants asked the circuit court to determine: a) whether the Council, before adopting its own goals and objectives, had already and as a matter of law adopted the Planning Commission's goals and objectives; b) whether the Council had exceeded its statutory authority when it had adopted its goals and objectives; c) whether the Council's goals and objectives constituted a "de facto amendment" of Lexington's zoning map; d) whether the Council's adoption of its goals and objectives had complied with due process requirements; e) whether certain Council members had a conflict of interest; and f) whether the Council's statement of goals and objectives had been arbitrary. Disposing of this claim, the circuit court

-15-

determined it was unripe and thus failed to present the "actual controversy" required of declaratory actions per KRS 418.045; that the appellants also lacked constitutional standing to assert this claim; and that the confluence of those factors rendered the appellants' requests for declaratory relief improper per KRS 418.065.

The appellants claim the circuit court erred. But, as set forth below, we agree with the circuit court's analysis. With respect to the issue of ripeness, this Court has stated the following:

> The basic rationale of the ripeness requirement is to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements. . . . A court is precluded from deciding questions which may never arise or which are merely advisory, academic, hypothetical, incidental or remote, or which will not be decisive of a present controversy.
>
> . . .
>
> Ripeness applies with equal force when the judiciary is requested to pass on the question of a local government's legislative authority and prevents courts from interfering . . . until it is necessary to do so.

*Berger Fam. Real Est., LLC v. City of Covington*, 464 S.W.3d 160, 166 (Ky. App. 2015) (internal quotation marks, citations, and brackets omitted). Furthermore, as our former highest Court explained:

> Ordinarily, no justiciable question may arise until after the enactment or passage of an ordinance or resolution. Then, the legislation having been accomplished, under traditional constitutional law, it may be put to the test of legal validity and the question may be raised whether it

-16-

would be for a private service or benefit to such degree that the court should determine the action was arbitrary. Its restraining power may then be directed against its enforcement.

*Avey Drilling Mach. Co. v. Lukowsky*, 261 S.W.2d 432, 433-34 (Ky. 1953).

Here, the circuit court applied these principles and correctly determined the appellants' request for declaratory relief was unripe, explaining in the salient part of its analysis:

> [T]he Urban Service Area has not been expanded and neither the Zoning Map nor the Zoning Ordinance text has been amended. The Council's adoption of goals and objectives is a statement of policy akin to proposed legislation. The ripeness doctrine "prevents courts from interfering [with questions of local legislation] . . . until it is necessary to do so. *Berger*, 464 S.W.3d at 166.

Proceeding to the issue of constitutional standing, our Supreme Court has explained:

> [F]or a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so, defined by three requirements: (1) injury, (2) causation, and (3) redressability. In other words, "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." "[A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent . . . ." "The injury must be . . . 'distinct and palpable,' and not 'abstract' or 'conjectural' or 'hypothetical.'" "The injury must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision."

-17-

*Commonwealth, Cabinet for Health & Fam. Servs., Dep't for Medicaid Servs. v. Sexton ex rel. Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 196 (Ky. 2018) (internal footnotes and citations omitted).  *See also Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 664 S.W.3d 633, 651 (Ky. 2023) ("For an injury to be particularized, it must affect the plaintiff in a personal and individual way.  This means the plaintiff personally has suffered some actual or threatened injury.  For an injury to be concrete, it must actually exist."  (footnote and citation omitted)).

Here, applying these principles, the circuit court likewise correctly determined the appellants lacked constitutional standing.  To that effect, it explained:

> [Appellants] lack standing to assert their claim because they cannot demonstrate a legal injury which is redressable by the Court.  [Appellants'] concerns that the expansion of the Urban Service Area will result in diminution in the fair market value of their properties and/or have negative impacts on their properties and businesses do not equate to a legal injury as a matter of law because the Urban Service Area has not been expanded. . . .  While zone changes and development may eventually occur as a result of the anticipated expansion of the Urban Service Area, no zone changes or development plans have been approved by the Council.  The Zoning Map has not been amended.  And because the Council sets the policy through the adoption of the statement of goals and objectives, the Urban Service Area could expand and then contract via a differently constituted Council, without any change in land use.  The uncertainty created by the possibility that the Urban Service Area will be expanded at some point in the future

is not a "concrete and particularized" injury which may be redressed by the Court.

The appellants further contend they satisfied the "injury" requirement of standing by asserting in their complaint that they would suffer an "imminent" injury; that an "imminent" injury qualifies as an actual injury for purposes of standing; and that because CR 12.02 required the circuit court to presume the *truth* of their factual allegations, dismissal on standing grounds was therefore improper. However, the appellants' characterization of their "injury" as "imminent" is a legal conclusion on their part, and "a demurrer admits as true only averments of fact and not legal conclusions." *Potter v. Trivette*, 303 Ky. 216, 197 S.W.2d 245, 246 (1946). As discussed above, the appellants have merely asserted a *potential* injury *contingent* upon the outcome of an ongoing legislative process – not the concrete and particularized injury that standing requires.

Additionally, the appellants now contend that "[t]o the extent there truly was no 'final action' at the time the Circuit Court dismissed the case, then, there clearly is one now." They assert that on October 26, 2023 (*e.g.*, six days *after* the circuit court rendered its dispositive judgment in this matter), the Planning Commission approved of adding 2,853 acres to the Urban Service Area. That said, even if the Planning Commission's action in that regard somehow "ripened" the appellants' declaratory action (and it did not), the appellants' contention fundamentally misapprehends the role of this Court: We sit as a court of review;

-19-

the scope of our review is limited to ascertaining whether error occurred below; and if the circuit court dismissed the appellants' claims as unripe at a time when the appellants' claims were indeed unripe, then the circuit court committed no error.

**2. "Appeal" under the auspices of KRS 100.347**

The appellants based their second claim upon KRS 100.347(3), which provides:

> Any person or entity claiming to be injured or aggrieved by any final action of the legislative body of any city, county, consolidated local government, or urban-county government, relating to a map amendment shall appeal from the action to the Circuit Court of the county in which the property, which is the subject of the map amendment, lies. Such appeal shall be taken within thirty (30) days after the final action of the legislative body. All final actions which have not been appealed within thirty (30) days shall not be subject to judicial review. The legislative body shall be a party in any such appeal filed in the Circuit Court.

As it goes, their claim is that by "improperly adopting" goals and objectives that directed the expansion of the Urban Service Area, the Council did something "related to" (for purposes of KRS 100.347(3)) amending LFUCG's zoning map – and did so without adhering to the requirements of KRS 100.211 or LFUCG Ordinance Section 6-4. The circuit court properly dismissed this claim because, as indicated from the obvious import of KRS 100.347(3) and its plain language, there can be no "final action of the legislative body . . . relating to a map

amendment" to appeal if *the legislative body* made *no map amendment*.  To quote

the circuit court's relevant analysis on that point:

> [E]xpansion of the Urban Service Area will occur, if at all, by action of the planning commission and, therefore, does not implicate KRS 100.347(3) relating to the "final action of the legislative body."
>
> . . .
>
> But even if the Urban Service Area is expanded by adoption of a new comprehensive plan, this is not, as a matter of law, an amendment of the Zoning Map.  As set out above, the Zoning Map is a creation of the local Zoning Ordinance and is entirely distinct from the Urban Service Area.  The expansion of the Urban Service Area will not result in any change in the way in which the property is currently zoned or may be used or developed, all of which are governed by local Zoning Ordinance Articles 6 and 21.  Construing the factual assertions in the Complaint as true, [appellants] are not entitled to relief under any set of facts pursuant to KRS 100.347(3).

(Internal footnote omitted.)

**3. Violations of "due process" and Section 2 of the Kentucky Constitution**

The appellants repackaged much of their previously discussed

declaratory action into a claim that asserted unspecified "due process" violations of

the Kentucky and United States Constitutions.  They also repackaged much of it

into a claim that asserted a specific violation of Section 2 of the Kentucky

Constitution, which provides:  "Absolute and arbitrary power over the lives, liberty

and property of freemen exists nowhere in a republic, not even in the largest

-21-

majority." The thrust of these claims was that, in their view, the Council injured them by acting unilaterally to expand the Urban Service Area without performing the research, analyses, or projections required by KRS 100.191.

The circuit court properly disposed of these claims for the same reason it properly disposed of the appellants' claims for declaratory relief: The appellants sustained no cognizable injury. To that end, it correctly explained:

> "Both the United States and Kentucky Constitutions prohibit the Commonwealth from depriving individuals of liberty or property without due process of law." *TECO Mechanical Contractor v. Commonwealth*, 366 S.W.3d 386, 393 (Ky. 2012). As a threshold matter, to challenge government action based on procedural due process, the [appellants] must show that the action damaged a property or liberty interest. *American Manufacturers Mutual Insurance v. Sullivan*, 526 U.S. 40, 59 (1999). "'Liberty' and 'property' are broad and majestic terms. They are among the '(g)reat (constitutional) concepts . . . purposely left to gather meaning from experience. . . . (T)hey relate to the whole domain of social and economic fact, and the statesmen who founded this Nation knew too well that only a stagnant society remains unchanged.'" *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972) (internal citation omitted). "[W]hile the Court has eschewed rigid or formalistic limitations on the protection of procedural due process, it has at the same time observed certain boundaries. For the words 'liberty' and 'property' . . . must be given some meaning." *Id.* at 572. To act as a "property" for the purpose of procedural due process, an interest must be based on "more than a unilateral expectation of it . . . [the plaintiff] must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. The Court concludes [appellants'] claims for violation of due process are not ripe because they have

suffered no deprivation of property. The threat to the [appellants'] property interests is theoretical because the Urban Service Area has not been expanded, no property has been re-zoned and the Zoning Map has not been amended.

## IV. CONCLUSION

Considering what is set forth above, we AFFIRM the Fayette Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Thomas W. Miller
Elizabeth C. Woodford
Elliott C. Miller
Graham Marks
Lexington, Kentucky

BRIEF FOR APPELLEES:

Susan J. Pope
Medrith Lee Norman
Lexington, Kentucky